### IN THE

# Supreme Court of Errors

#### OF THE

## STATE OF CONNECTICUT,

##### IN NOVEMBER TERM, 1814.

—————:::::✦:::::—————

### PECK *against* SMITH.

| 1 | 103 |
| 69 | 162 |
| 69 | 171 |
| 70 | 614 |
| Conn. | |
| 1 | 103 |
| 72 | 426 |

THIS was an action of trespass, alleging that the plaintiff being seised and possessed of a certain close or piece of land in *Waterford*, (describing it,) the defendant, contrary to the mind and will of the plaintiff, and without law or right, and with force and arms, entered into and upon the plaintiff's said land ; and with the like force and arms, erected upon said land one certain dram or grog shop ; and with the like force and arms, dug up, broke and destroyed the plaintiff's herbage, sod, turf and grass then and there standing and growing thereon, sunk and deposited therein and thereon large stone ; together with various other enormities ; to the plaintiff's damage, &c.

The cause was tried on the issue of *Not Guilty*, at *New-*

*A high-way having been laid out and established, pursuant to the statute through the land of A., he conveyed the same land to B. with the usual covenants of warranty and seisin, " saving and excepting the said highway :" Held that the right of soil in the highway vested in B., subject to the right of passage in the public, and that B. could maintain trespass quare clausum fregit, against a stranger for the continuance of a shop, &c. erected by him on a part of the highway not used for travelling before the conveyance from A. to B.*

*New-Haven,*
November,
1814.

*Peck
v.
Smith.*

*London, September* term, 1812, before *Mitchell,* Ch. J., and *Brainard* and *Baldwin,* Js.

On the trial, the plaintiff exhibited, as evidence of his title, a deed from *Benjamin Williams,* Esq., with the usual covenants of seisin and warranty, conveying to the plaintiff a certain piece of land therein described, with a reservation annexed in these words : " Saving and excepting the road or highway, laid out, used and improved, running from the old highway to the bridge over the premises." It was admitted by the defendant, that the plaintiff was well seised of the premises as described in the deed, except the road or highway therein excepted. And it was admitted, that the only trespass, if any, committed by the defendant, was, that he dug and stoned up a small cellar, and set a small shop thereon, in " the road or highway, laid out, used and improved, running from the old highway to the bridge over the premises," as saved and excepted in the deed ; and that the road or highway in question had been, according to the statute law of this state, laid out, accepted and used, as and for a public highway, and the defendant dug and stoned the cellar, and erected the shop thereon, and took possession thereof, long before the plaintiff's purchase. It was also admitted, that the plaintiff was well seised of the land on both sides of the highway ; and that said acts of the defendant were done within the limits of the highway, but not on that part used for travelling. Upon this state of facts the court directed the jury, that if they found that the acts complained of were done within the limits of the highway, the plaintiff could not maintain this action ; and that they must, in such case, find a verdict for the defendant. A verdict being found accordingly for the defendant, the plaintiff moved for a new trial ; and the questions arising on such motion were reserved for the advice of all the Judges.

The case was argued at *November* Term 1813, by *Daggett* and *Goddard* for the plaintiff, and *Gurley* for the defendant.

For the plaintiff it was contended, that he was proprietor of the land over which the highway in question was laid out, and was entitled to recover against the defendant in this action. *Lade* v. *Shepherd,* 2 *Stra.* 1004. *Goodtitle* d. *Chester* v. *Alker & al.* 1 *Burr.* 133. *Harrison* v. *Parker,* 6 *East*

154. *The Commonwealth* v. *Peters,* 2 *Mass. Rep.* 127. per *Sedgwick,* J. *Perley* v. *Chandler,* 6 *Mass. Rep.* 454. *Cortelyou* v. *Van Brundt,* 2 *Johns. Rep.* 357. *Northampton* v. *Ward,* 2 *Stra.* 1238. S. C. 1 *Wils.* 107. were cited.

For the defendant it was insisted, 1. That whatever the theory of the *English* law may be, yet in this state an action of *quare clausum fregit* will not lie for a trespass or nuisance upon the highway ; the whole title to which passes from the original proprietor, and becomes vested in the public, at the time the highway is laid out and established.

2. That admitting the general doctrine contended for by the plaintiff, still from the terms of the deed under which he claimed, he had never acquired a title to the *locus in quo.* The right of action, if any, was in *Williams,* his grantor.

The Court took the case into consideration ; and at this term the Judges delivered their opinions *seriatim.*

REEVE, Ch. J. The law of highways, if I may so express it, exhibits some singular traits of character, which are not to be found in any other subject. I flatter myself the following view of the subject, so far as it respects the law of *England,* will be found correct.

I apprehend that I can better convey my ideas on this subject by putting cases than in any other way.

In the first place, I will suppose that the lord of a manor (and the kingdom was once parcelled out into manors) should sell a highway through his manor, or, as doubtless was often the case, should give one, or one should be laid through his land in the manner the law then prescribed, no deed to any person of the land covered by the highway being executed ; the enquiry is, what would pass to the public by the sale, or gift, or laying out ? Nothing but a right of passage for the king and his subjects ; and all the rest would remain the property of the lord of the manor as long as the highway continued to be a highway ; that is, he would be proprietor of the soil, the trees growing thereon would belong to him, and all mines and quarries under ground would be his. If the easement should be injured by his enjoyment of the appurtenances, he must cease from the enjoyment : but whatever could be done to or with them, compatible with the full enjoyment of the

*New-Haven,*
November,
1814.

Peck
*v.*
Smith.

easement by the king and his subjects, might be done by the lord of the manor. It is here to be remarked, that the public acquired a right to this easement, although a kind of incorporeal interest, without deed.

In the second place, I will suppose the lord of the manor should sell his land lying on the east side of the highway to *A.*, bounding him on the highway west, and should sell the land lying on the west side of the highway to *B.*, bounding him on the highway east. Has the lord of the manor any interest in the highway after this sale? I answer none; for he is no longer proprietor of the land adjoining to the highway. It is the proprietor of the land adjoining to the highway that is then entitled to the highway; if he were not, the benefit of his manor might be lost by the intrusive intermeddling of others over whom he had no controul; and as every subject would have an equal right to occupy, it would be a source of much disorder arising from conflicting claims of prior occupancy. Sound policy, therefore, dictated the rule, that the highway should be the freehold of the lord of the manor, as long as he held the land adjoining the highway. But in the present case, the land is sold to others, and the reason why the lord should have any ownership has entirely ceased. The next enquiry is, will the purchasers on each side of the highway have a property in the highway? I answer, yes; and for the same reason that the lord of the manor had, in the first case; and they own each to the centre of the road. By this it is not intended to assent to the proposition that the proprietors of land adjoining to a highway have an interest in the highway to the centre of the road as they have in their other land subject to the easement: For suppose,

In the third place, that the highway had been laid out wholly on the land of *B.* There are cases where *B.*, the proprietor, may by a writ *ad quod damnum* remove the easement, and the land will wholly belong to *B.* in fee, free from incumbrance, as it was formerly, and *A.* would be entitled to nothing in such land. But as long as that land continued a highway, *A.* would have an interest therein to the centre of the road, as well as *B.* And in this there is no injustice done to *B.*; for he had been paid for the land, or had freely dedicated it to the public; and it was not a reason founded in any equity that either *A.* or *B.* should have an interest therein, but one founded wholly in policy.

If, indeed, it was so, that when a road was disused, and ceased to be a road, it vested in *A.* or *B.*, unless where *B.* had freed it from the easement by a writ *ad quod damnum*, in which case he re-paid the purchase money, manifest injustice would be done. But the truth is this ; when the road ceases to be a road, the land reverts to the public,—that is to say, to those who are under an obligation to maintain the road, with power to sell it, and apply the avails to the purchase of new roads. Whilst it is a road *A.* and *B.* have the interest in the highway contended for as laid down in 1 *Roll. Abr.* 392. ; but when it ceases to be one, it is at the disposal of the public, as before stated ; for if this were not so, then whenever an old highway is disused, and stopped up, as it is provided by law it may be when a new highway is made leading to the same places as the old one, over more convenient ground, or for the purpose of shortening the road, the land would belong to *A.* and *B.*, or at least, to that one from whose land the old highway was taken. But this is not so. The law expressly provides, that the surveyor of highways shall sell the old highway to its full value to some adjoining proprietor, who is vested with the fee of the land free from all incumbrances ; and if such proprietor does not buy it, he has power to sell it to any person who will buy it ; and the avails of the sale are to be applied to the purchase of other highways, without paying any thing to the adjoining proprietors for their supposed interest ; for they had none only whilst it remained a highway. Now, this could not possibly be done by any legislature, if there was any title in the adjoining proprietors other than has been admitted. It is true, the legislative power is such that they can take from proprietors their lands, and convert them into highways ; but in that case, the proprietors must be indemnified for the injury sustained. But no legislature ever claimed that they could take from a proprietor his land, and sell it, and apply the avails to such use as they pleased, without making the least compensation for it. And it is remarkable that the *English* statute, which provides for laying out highways through lands, provides that twelve jurymen shall assess the damages as they think reasonable not exceeding forty years purchase for the clear yearly value of the ground, which is the full value of any land, and also damages for the making of new ditches and fences. The act then provides, that upon

*New-Haven,*
November,
1814.

Peck
*v.*
Smith.

*New-Haven,*
November,
1814.

Peck
*v.*
Smith.

the damages so assessed being tendered to the owner of the land, he shall be divested of his interest therein forever, saving to the owner, however, all mines, minerals and fossils, and the timber thereon growing. It then proceeds to provide, that if the highway should be disused and stopped, because not wanted, it is to be sold, and no compensation to be made to the owner for any right that he has therein, and the avails are to be applied for the purchase of the new highway. It also provides, that if the old highway remains open because there are houses to which it leads which are not accessible by the new highway, then all minerals, &c. continue to be the property of the adjoining proprietors.

From this view of the subject, the proprietors of lands adjoining a highway will be found to own the freehold of the highway subject to the easement of passing over it as long as it continues such, and no longer ; for when it ceases to be a highway legally, those who are obliged to maintain highways may sell it, and apply the avails to purchase new highways therewith, without any further compensation therefor ; so that all the highways in the kingdom are a fund, if disused, to procure therewith new highways. In other words, the doctrine of the *English* law, as supported by all the authorities, appears to be this ; that the proprietors of lands on each side of the highway have a freehold estate in the highway subject to the easement before mentioned, which freehold estate is of uncertain duration, no time being limited when it shall end, and yet is liable to end, and will cease in the event of the highway ceasing to be an highway. It is then an estate for life ; for such is every estate which may last during natural life, and is liable to be determined on some uncertain event ; and such an estate is a freehold estate.

The enquiry then is, where is the fee ? In the view of common sense, it is not necessary that it should be any where ; and that would be satisfied with a power vested in that community which is put to the expense of maintaining highways, to sell the highway, and apply the avails to the purchase of new highways ; but as the law has a singular abhorrence of the idea that a fee should not be in any person, in compliance with the maxims of law we may consider the ultimate fee of the land to be in that community, and the surveyor of highways, who is vested with power to sell such highway, and apply the avails as before stated, as a trustee

*New-Haven,*
November,
1814.

Peck
*v.*
Smith.

to this community to account with them for the avails, and to shew that he has applied them in conformity to the trust reposed in him.

I believe a thorough investigation of the authorities in the books will satisfy the enquirer, that the common law of *England* is as has been stated ; and I see no reason from any thing that I can discover, to conclude that our own law is not in all the important principles here mentioned the same. We have a statute(*a*) on this subject which informs us, that when a highway is disused, as it may be by a judgment of the county court, it shall belong to him who owns the fee of the land. But this throws no light on the subject until we are informed who does own the fee. It cannot mean, I think, that the person from whose land the highway was taken *of course* owns the fee. This would throw us into the utmost confusion. Very many of our highways were dedicated to the public by the original proprietors more than a century ago. Will the heirs of these proprietors, if such highway is disused, own the highway in fee ? Such a narrow strip would be to the proprietor a very inconvenient inheritance, and very destructive to the adjoining proprietors. Such a dedication has always been understood to be an abandonment to the public of the highway with no remaining claim. This I am warranted to say ; for no proprietor has ever claimed the fee of the highway ; and, on the contrary, the public have always claimed a right to a highway that is no longer used as such. This seems to be an universally received opinion, if we can judge from the conduct of the towns in selling such highways. They evidently view them as theirs, and treat them accordingly. And this applies equally well to highways that have been laid out according to the usage in *Connecticut.* But what is decisive of the question is, that the legislature themselves have regulated this matter by vesting the public with a right to sell such highways, and take the avails. This is what they could not do, if on the highway being disused it belonged in fee to its original owner. This proves demonstrably to my mind, that the original proprietor is not of course again proprietor when the highway is disused ; for the contrary opinion has been, and now is universally practised upon. Every town in the state where highways have been laid out that now have

(*a*) *Tit.* 86. *c.* 2. *s.* 2.

Peck
*v.*
Smith.

become useless as highways, look to these as a fund to defray the expense of laying out new highways; and the conduct of the legislature, as before alluded to, demonstrates that they view the community which must by law be at the expense of maintaining highways as vested with the right to them.

From this view of the subject it will follow, that if the common law is our law, and I see no reason to conclude that it is not, then the adjoining proprietors of a highway have a defeasible freehold estate in the highway subject to the easement of passage; and the ultimate fee of the land is in that community which must maintain highways, and, when the highway is disused, have power to sell it.

This opinion is in perfect accordance with the case of *Stiles* v. *Curtiss*, determined in this Court. In the present case, the plaintiff was proprietor of the adjoining land on both sides of the highway; and had there been nothing else in the case, I could not have hesitated but that there ought to be a new trial; for I believe that the proprietor of land adjoining a highway has a freehold estate in the highway, according to the doctrine before laid down.

But in this case, there is an exception of the highway, in which the grantor, before he conveyed to the plaintiff, had a freehold estate. Does this make any difference? It would in my mind, if the estate holden by the proprietor in the highway was of such a nature as that he could have excepted it to himself. But this was impossible; for the moment he parted with the land adjoining the highway, he lost his estate in the highway; for this could not be holden by any person but by the owner of the land adjoining to the highway. The exception, therefore, was, for such purpose, nugatory; and there is no necessity of supposing that the owner of the land adjoining had any such intention as to except the highway for himself. The only design doubtless was to avoid all liability on his covenants in the deed.

My opinion therefore is, that the Court ought to advise a new trial.

INGERSOLL, J. It is contended in this case, that the plaintiff is the owner of the soil, where the trespass is said to have been committed, subject to the easement of the highway: That this being the case, the action of trespass

brought against the defendant, is well founded.    It is agreed, that in *Great-Britain* land made use of as a highway, does not belong to the king, but belongs to the original proprietor, whose it was when taken for a highway, or to those who claimed under him : That the king has a right of passage only for his subjects. This principle, it is said, ought to be adopted in this state, as being a common law principle.    The question is, whether our circumstances are not such as to require a different rule ? Or rather, whether ever since the first settlement of this state (then a colony), it has not been universally understood, when lands have been reserved or laid out for highways, that the fee belonged to the public ? And whether the practice has not been, uniformly, to treat such lands as public property, in all the laws enacted with respect to them ; and also, in the course pursued in all cases, where new highways are laid out, and in the management of them, after they *have been* laid out ? When new townships have been taken up, I believe, it has been the general, if not the universal practice, to reserve lands for highways. The reserving or making of highways has been coeval with the division of lands among the proprietors. This reservation, I think, must of course have been to the public ; at any rate, it could not have been a mere right of passage over the land of an individual, inasmuch as no individual ever separately owned the land so reserved.    As to all the ancient highways, then, it seems to me, there can be no pretence that they are mere rights of passage over the lands of an individual.

But it may be said, and in fact is said, that this is a modern highway, laid out over this farm, and that of course, it is a mere right of passage.    It appears, to be sure, by the case, that this highway has been laid out, according to the statue law of this state, as and for a public highway.    Taking it then, as a highway laid out over the land of an individual, or rather laid out according to the provisions of this statute, I am of opinion, that the land itself is taken for the public. The statute provides, that the damages sustained by the person whose land is taken for a highway shall be estimated by the committee appointed to lay it out, and also makes provision for the payment of those damages.    The statute, indeed, does not say, that an estimate shall be made of the full value of the land taken, and that payment shall be made accordingly.    I believe, I may venture to say, however, that

*New-Haven*,
November,
1814.

Peck
*v.*
Smith.

the uniform practice has been, to allow the full value to the proprietor, if the highway be considered as not beneficial to him. Cases indeed occur, where no damages are given to him, on the ground that he suffers nothing, inasmuch as the highway is considered as very beneficial to him; more so, than the value of the land taken from him. This mode of assessing damages is a practical construction of the statute, and ought to have great weight, if the statute itself be not very explicit on the subject.

In the year 1699, it appears by the statute book, jurisdiction relative to laying out and altering highways, was first given to the county court. Previous to this time, I presume, it was seldom or never practised to lay out a highway through the lands of an individual proprietor, as there was a sufficiency of common lands not taken up for all highways thought to be necessary. Whether there was any statute on the subject, I know not.

It must be supposed, when the legislature first took up the business of laying out highways through the land of an individual, the practice of reserving lands for highways, in the first settlement of towns, was taken into consideration; and if those ancient highways were not mere rights of passage, but the soil of them belonged to the public, it was intended, that those laid out by virtue of this statute, should stand precisely on the same ground.

The practic, ealso, as has been observed, has corresponded with this idea. Never, I believe, has it been taken into the account in estimating damages, that a right of passage only was taken from the proprietor, and that the full use of the land might come to him again. Indeed, it would be next to impossible, to make an appraisement on this principle.— Whether the proprietor would again have the full enjoyment of his land in one year, or never, would be a matter of utter uncertainty. Of course, no rule could be given, by which to make the appraisement.

Again, if the highway should in a few years be discontinued, the proprietor would have his land, and payment for it, into the bargain.

Further, it has been an established practice for a long time, probably ever since highways have been laid out, to exchange highways for highways, when an old highway has been discontinued, and a new one taken up. This procedure

New-Haven,
November,
1814.

Peck
v.
Smith.

must have been on the ground, that the town was entitled to the fee of the land taken up for highways.

To make the matter clear, that my construction of the law is correct, may be adduced that clause in all the city charters, " that the mayor, aldermen and common council are empowered to lay out new highways, streets and public walks, or to alter those already laid out, and to exchange highways for highways, or to sell highways for the purpose of purchasing other highways, taking the same measures in all respects, as are directed by the laws of this state, to be taken in case of highways laid out by the selectmen for the use of towns," &c. Here they are to take the same measures to lay out highways, as selectmen take, in the case of towns, and no other. Damages are to be estimated and paid in the same manner, and authority is given to exchange highways for highways. There is no clause vesting the fee in the mayor, aldermen and common council, or in the city, or in any public body, any more than in the case of the selectmen, when highways are laid out by them ; and yet having precisely the same authority, they (the mayor, aldermen and common council) are authorized by law expressly, " to exchange highways for highways, and to sell old highways and purchase new ones," in the same manner, as had been practised by selectmen.

These acts of the legislature, as it appears to me, proceed on the ground, that when a highway is laid out, it belongs the whole of it, land and all, to the public. They show what the construction of the statute relative to this subject has been, which of itself will, without any aid from the legislature, form a rule or common law for us.

The conclusion of the whole is, that in this state, however different it may be in *Great-Britain,* when land is laid out for a highway, the land itself becomes public property, and no individual has any right or title to it ; and on this ground, there ought to be no new trial of the cause.

But, secondly, supposing the fee in the present case remained in the original proprietor, when his land was thrown open, and laid out for a highway, still it is not clear to my mind, that this action is maintainable.

I am sensible, in thus questioning this right of action, I am setting up my opinion against the opinion of much greater men, and much more able lawyers, than I am ; and am

also questioning the propriety of some decisions in *Great-Britain,* as well as in our neighbouring states, on this subject. I am well aware, the modern decisions in *Great-Britain* have been, that both trespass and ejectment will lie for land contained in a highway. Indeed, I know not, but it may be now considered as a settled principle in that country, that these actions are maintainable in cases of this kind. But the question is, whether there are not certain established principles of law, that operate against these actions to the extent to which they have been carried? Whether also these principles must not be given up, or the actions given up? And if so, whether these adjudged cases ought to be considered as precedents for us?

In the first place, to take up the action of ejectment. I presume, it will be agreed, that the action of ejectment is brought to recover possession of lands unlawfully withheld from the plaintiff. It is an action which gives specific relief. So say all the elementary writers; so say the judges, when giving an opinion, as to the nature of this action. So says Lord *Mansfield,* particularly, in the first volume of *Burrow's* reports, page 119. I mention what he says, because he gave an opinion afterwards in a case reported in the same volume, that the action *would* lie, in which, as it appears to me, possession *could not* be given. His words are in the above quoted page " An ejectment is a possessory remedy, and only competent where the lessor of the plaintiff may enter." And again, " Every plaintiff in ejectment must show a right of possession, as well as of property." Indeed, on a recovery by the plaintiff, the form of the execution is to give possession, as well as damages.

Clear it is, then, if you are not entitled to the possession of the property sought to be recovered, you are not entitled to your action. It makes no difference, whether the fee be in you, or not. If another person has a right to the present possession, you cannot have it, however it may, in a course of time, come to you. This principle so forcibly struck Lord *Hardwicke* in a case before him at *nisi prius* in the year 1735, that he decided, " That no possession could be delivered of the soil of the highway; and therefore no ejectment would lie for it: And if it was a nuisance, the defendant might be indicted." This decision is cited in a case reported in the first volume of *Burrow's* reports, from page

*New-Haven,*
November,
1814.

Peck
*v.*
Smith.

133 to 146 inclusive. In page 140, reference is made to this decision of Lord *Hardwicke.* In this case in *Burrow,* however, wherein the above mentioned reference is made, it was expressly decided by the court, to wit, Lord *Mansfield,* and Justices *Denison* and *Foster,* that an ejectment *would* lie for a highway, and that the land might be recovered subject to the right of passage, or, as it is expressed by some of the judges, subject to the easement. They said further, that there was but a loose recollection of the case before Lord *Hardwicke;* little regard was therefore paid to it. This case seems to have settled the question in *Great-Britain.*

But, let us examine the principles,—those principles, which Lord *Mansfield* in page 119 of *Burrow* above mentioned, lays down as essential to the maintenance of the action of ejectment. A leading principle is, that the plaintiff is entitled to the possession of real estate, wrongfully withheld from him by the defendant. He brings his action to recover this possession; and if the action be well founded, he recovers, and is put into possession. I would now ask the question, whether in this case determined by Lord *Mansfield* and his brethren, as above mentioned, the plaintiff could have been put into possession of this highway? Whether he had any right to it, in exclusion of all others? Or whether he had a right to hold it with others? That he could not exclude the public or the king is very clear: And that he could not be upon the land *holding* or *possessing* it in any other manner, than any other subject might hold or possess it, is to me, *as* clear. He could neither build upon it, plow it, nor sow it; because in so doing, he would interfere with the rights of the public. In short, he was, by its being a highway, entirely excluded from having any foothold on the soil, though the freehold or fee was in him.

" The land," it is said " may be recovered, subject to the right of passage, or subject to the easement." What is the meaning of these expressions? Is it meant, that possession can be given, subject to the right of passage? The meaning, I think, must be this, if any thing. The object of the action, as has been observed, is to get possession. It is to get possession, as well as to ascertain a right; not to ascertain a right merely. But, how can this possession be enjoyed subject to the easement? The easement is the

Peck
*v.*
Smith.

right of passage, and an individual possession interferes with this right. One, then, interfering with the other, they cannot exist together. It is not like holding land subject to the better title of another. It is like holding it in opposition to such title. If then, possession cannot, on legal principles, be given of a highway, the action of ejectment will not lie.

On the ground that the plaintiff in ejectment must be entitled to the possession of the property demanded it is, that an heir to an estate cannot recover against a disseisor, as long as there is a tenant in dower or by the curtesy in being, who has a right to the present enjoyment. This was determined a few years ago in the case of *Bush & al.* against *Bradley*, reported in the 4th volume of *Day's* Cases from page 298 to 310. Indeed, this I believe, is a settled principle, that a reversioner cannot recover in ejectment, while there is a particular tenant for life or for years under him, who has a right to the possession.

At the time when this decision in *Burrow* establishing the doctrine that ejectment would lie for a highway, took place, it was the practice in *Westminster-Hall*, to permit a plaintiff to recover in ejectment when he had not the clear legal title in himself. That is to say, if a *cestuy que trust* should bring the action, the judges would not permit a defendant to set up a legal title in the trustee, as a bar to the recovery of the plaintiff. Nay, they went further, by permitting a plaintiff to recover in ejectment, when at the time of bringing the action, there was an outstanding, unsatisfied term of the premises, whether the termor were the plaintiff's own trustee, or not. So also, if ejectment were brought by a second mortgagee, they would not permit a defendant to set up a legal title in the first mortgagee. A recovery, however, was not permitted, except where the plaintiff avowedly meant to recover subject to the better title of the termor, trustee or first mortgagee, and where those having the legal estate did not interfere. When this was done, he was permitted to recover, and to go into possession, and to hold the premises subject to the term, trust or mortgage, which ever it was.

This was the doctrine of Lord *Mansfield*, Mr. Justice *Buller*, and some others. But I take it, this doctrine is now exploded, and a plaintiff cannot now recover in ejectment in the courts in *Great-Britain*, unless he have the clear

legal title to the estate, and unless, also, he have a right to the possession of it.

*New-Haven,*
November,
1814.

Peck
*v.*
Smith.

An exception perhaps may be made to the rule, where there is only an outstanding satisfied term; or where a mortgagee attempts to defeat the title of his own mortgagor, by setting up title in a stranger; or where perhaps the legal estate is in the plaintiff's own trustee. In the second volume of the reports of *Durnford* and *East*, from page 684 to 701, is reported the case of *Doe* on the demise of *Hodsden* against *Staple*, in which it was determined by Lord *Kenyon*, Chief Justice, *Ashhurst* and *Grose*, Justices, against the opinion of *Buller*, Justice, that the plaintiff must have the legal title, and a clear right to the possession of the premises, or he could not recover in ejectment. The idea of recovering with a view not to disturb the right of another to the possession of the premises, who did not interfere in the suit, was done away. The case was thus circumstanced. The plaintiff was vested with the fee of the land demanded, but a term had been created for the benefit of an annuitant who was then alive, and the plaintiff gave notice, that he meant to recover subject to the payment of the annuity. The court laid it down as an unbending rule, that the plaintiff in ejectment must have the legal title, and a right to the enjoyment of the premises demanded, or he could not recover. The only exceptions to the rule, as made by the court, were, the case of an outstanding satisfied term, the case of a plaintiff's own trustee, and that of a mortgagor disputing the title of his own mortgagee.

This, I believe, to be the law now in *Great-Britain*. If then, in ejectment for a highway, it were now a new question there, I see not why the judges would not permit the defendant to say to the plaintiff " The *public* have a right to the sole *possession* of this ground, though *you* may have the fee." " You have no more right to the exclusive possession of it, than I have." " If you get possession of it, you will be a tort-feasor, and the public will immediately turn you out of it."

It was, to be sure, pretty easy to say, the plaintiff might recover subject to the easement, after it had been determined, that he might recover without having the better title. But even then, it appears to me, that the two cases are different. In the one case, a recovery is had against a defendant who

has no title ; and he who has title, is neither in possession, nor claims to be in. In the other, a recovery is had, where those who have title *do* claim the possession ; and an occupation of the property in dispute by the plaintiff equally interferes with their possession, and their rights, as does the like occupation by the defendant.

Thus, as it strikes me, an action of ejectment for a highway, or part of a highway, could not be maintained consistently with plain acknowledged principles of law, if it were a new case now to be be decided ; and of course, that it is not maintainable in this state.

But the case under consideration is an action of trespass, and it may be said, though ejectment *will not lie*, yet trespass *will*. I am of opinion, however, that as strong objections may be made against the action of trespass, in a case circumstanced as this is, as against the action of ejectment.

Here also I must concede, as I did, in making my observations relative to the action of ejectment, that it is pretty well settled in *Great-Britain*, that trespass will lie by the owner of the soil for an injury done to it in a highway, and, I know not any exception to the rule. When I concede this, it must be understood, that for an injury of this kind, it was formerly held in that country, that trespass would *not* lie. In the case of *Durand* against *Child*, reported in 1 *Bulstrode* 157. it was held, that trespass would not lie. The reason given was " For that when land is dedicated to the service of the public, it ceases to be private property." In the eighth year of the reign of *George* the second, however, in the case of Sir *John Lade* against *Shepherd*, reported 2 *Strange*, 1004. it was determined, that trespass *would lie*. The case was, Sir *John Lade* formerly owned the property, where the trespass was supposed to have been committed, and built a street upon it, which after that, had ever been considered as a highway. The court determined, that it was " a dedication of it to the public, so far as the public had occasion for it, which is only a right of passage. But it never was understood to be a transfer of the absolute property of the soil." It was also held in a later case determined in the 13th of *George* the second, by eight judges out of eleven, that " if this action is brought by the owner of the soil for a trespass in a highway, it cannot, on *not guilty*, be given in evidence, that the place in which the trespass is charged to

have been committed, was a highway." I know not any

other cases, where the point has *been made*, and a direct
decision had on it. No doubt there have been many decisions
of the like kind, considering the point as being settled.

As to the case of Sir *John Lade*, however, perhaps it
ought to be observed, that as he himself voluntarily opened
a passage over his own land, he might do it, on such terms,
as pleased him. It was competent for him to make it a mere
right of passage, and to reserve every other right of the soil
to himself.

As to the other case, it was a divided opinion, to make the
most of it, if it went to decide the question directly, that
the action of trespass would lie by the original owner of the
soil, for an injury done to a highway. But it will be
observed, that the only question decided was, as it appears
in *Bacon's Abridgment*, 5th volume, page 161, that on *not
guilty*, it could not be given in evidence, that the *locus in quo*
was a highway. Possibly the court meant to decide only,
that as the fee of the land, or, at any rate, the freehold was in
the plaintiff, it was not competent for the defendant, under
the plea of *not guilty*, to avail himself of any circumstances
to show that the land was in such a situation, as that the
plaintiff could not recover : That under the plea of *not
guilty*, nothing should be given in evidence, but a clear want
of title in the plaintiff.

But be the principles of these decisions as they may, as I
have before observed, it is *now* considered in *Great-Britain*
as a settled point, that the action of trespass may be brought
for an injury done to a highway. But, I think notwithstand-
ing, in this state, we ought not to take it for law, that the
action is sustainable, without examining the principles on
which an action of trespass is founded. If those principles
will warrant the action, it ought to be sustained ; if other-
wise, it ought not to be sustained.

It is an essential ingredient in an action of trespass, that
the plaintiff be in possession of the property at the time of
its being taken or trespassed upon ; or, at any rate, that he
have a right to the possession. If the property be personal,
the possession may be actual or constructive ; if real, an
actual possession is requisite for the maintenance of the
action. On this ground it is, or at least this is one ground,
why a reversioner cannot bring this action against any one,

who enters upon his estate, plows it up, treads down the grass, or does any other injury to it. Every injury of this kind is done to the particular tenant, the lessee, the man in possession. It concerns not the reversioner, who plows his land, who takes the fruit growing on it, or who does any other trespass on it. He has his rent, and the tenant being entitled to the use and possession of the land, can alone bring the action for all trespasses on it. True it is, if any thing be done, which comes under the denomination of *waste,* this goes to the destruction of the reversioner's estate, and this being an injury to him, he can have redress ; but it must be by an action of waste, *not* trespass. This action must also be brought against the tenant, whether the waste be done by him, or a stranger. If it be done by a stranger, the tenant has his remedy over against him.

These then, as I conceive, being the acknowledged principles attached to the action of trespass, let us see how they will apply to the case under consideration. It will be proper now to attend more particularly to the case under consideration, and to see, for what acts, if any, the defendant is liable. By the case stated, the defendant has barely kept possession of the shop and cellar, since the plaintiff owned the land. For the building of the shop, digging and stoning of the cellar, I presume, it will not be urged, that he is liable to the plaintiff. These acts were done before the commencement of the plaintiff's title, and clearly were no injury *to him.*

But indeed, if this using and keeping possession of the shop and cellar, had been on the plaintiff's land unincumbered with any easement or highway, the same would have been an injury to him, and for which damages might have been recovered by an action of trespass. But the land being thrown open, and used as a highway, what injury is it to *him,* that this shop and cellar are there ? Or rather, what more injury to him, than to any other individual of the community ? Is *he* deprived of any right ? Could *he* have set up the same shop, and dug the same cellar ? Suppose the shop had been set up, and the cellar dug in the travelled path ; could the plaintiff, as owner of the soil, have recovered damages for these acts ? The answer, as it seems to me, is obvious, that in the case put, he could not recover damages. I ask then, whether the use of every part of the

*New-Haven,*
November,
1814.

Peck
*v.*
Smith.

highway is not as much given up to the public, as *that* of the travelled path. Every encroachment, in every part of the highway, may be removed. This very building may be abated or removed, as a nuisance, and the defendant may as much be indicted for keeping it there, as if it were in the middle of the path.

Where then, I ask again, are the plaintiff's separate rights? In the 6th volume of *Massachusetts* Term Reports, page 456, Chief Justice *Parsons,* speaking of the rights which the owner of land taken for a highway, has in or to such land, says, " Every use to which the land may be applied and all the profits which may be derived from it, *consistently* with the continuance of the easement, the owner can lawfully claim." And though he agrees to the principle, that the owner may maintain both trespass and ejectment for injuries to his land encumbered with a highway, yet I think, an inference may be drawn from what he says, as above stated, that trespass would not lie, in the case under consideration. " Every use to which the land may be applied, &c. *consistently* with the continuance of the easement, the owner can lawfully claim." The inference is, as it appears to me, that " every use to which the land may be applied *inconsistently* with the continuance of the easement, the owner *cannot* lawfully claim." That the keeping up of this shop, and having this cellar dug in the manner as the case states, are acts inconsistent with the continuance of the easement or highway, I think, is undeniable.

I have put the case of a reversioner not being able to recover for a trespass on his estate, supposing it to be apposite to the point in question. I think it is so, in a good degree. The reversioner cannot recover, because he is out of possession, and because the present beneficial use of the land is in another. The plaintiff, in like manner, is out of possession, entirely so, for the purpose of building on the land, or digging a cellar on it. The public is *in* possession for occupancy, and for every useful purpose. The ground of an action of trespass is, to recover damages for an injury done to the plaintiff, and always implies, that by the trespass, he suffers a wrong, or is deprived of a right. Take the case of a reversioner; whatever trespass is committed on his land, if it do not amount to waste, it injures not him. All the profits of the land, for the time being, belong to the particu-

New-Haven,
November,
1814.

Peck
v.
Smith.

lar tenant. *He* alone has a right to use the land as pleases him, or in such manner, as it has been used by the trespasser. In short, as it strikes me, a just criterion to determine, whether or not the action is maintainable, is to determine whether the plaintiff can do the acts, which have been done by the defendant. When I now speak of the action of trespass, I mean of trespass on land. This rule, I think, will hold in every case short of waste. If a man plows or feeds my land, in my use and possession, or treads down my grass, he does that, which I alone have a right to do. If I have no right to do these acts, I cannot complain, that he has deprived me of a right : Consequently, I cannot complain, that he has done me a wrong. Apply these principles to the present case. Has the plaintiff a right to occupy this house and cellar in the manner in which they have been occupied by the defendant ? The answer at once is, *no*. By so occupying them, he would infringe on the rights of the public. For so doing, he would be indictable, as for an offence, not to say, that an action of ejectment would lie in favour of the public to turn him off; indeed, there is no need of the action in favour of the public, as the shop may be taken down or removed off, and the cellar be filled up, on the ground of their being nuisances.

When the land of any person is uninclosed, it may be fed by cattle not his own. It may be travelled over by other people, and it is not in his mouth to say, why is this done, or why do ye so ? In like manner, if it be taken for a highway, it may be thus fed and thus travelled on. Why may these things be done ? For this plain reason, inasmuch as the public has taken it, his separate rights of feeding it, and of travelling across it, are gone, they cannot be enjoyed. So also, by its being thus taken, his separate rights of keeping a shop and cellar on it, are in like manner gone.

How it might be as to mines under ground, with which the public has no concern, I do not pretend to say. Though indeed I might say, if the highway be but a mere right of passage, the mines would belong to the owner of the soil, as his separate property, and for violating this property, trespass would lie, as in all other cases of the violation of property.

Neither do I pretend to say, but the proprietor may have an action of trespass for cutting down trees on it, and car-

rying them away, provided they are not needed by the public. These cases stand on a different ground from the case under consideration. It will be enough, however, to determine them, when they shall come up. Sufficient is it for the present, to determine the case we now have.

One word further ; if this action be sustainable, it may be sustained for every load of wood, every log, every cart, plough or other instrument of husbandry laid upon the highway, which would be highly prejudicial to individuals, as well as totally overturn what always has been considered as the law on this subject.

These are my reasons against granting a new trial, going on the ground, that the highway is but a mere right of passage. These reasons are to me conclusive ; not so perhaps to any one else. There are opinions of great men against me, at least as to some things I have advanced. But as it is a new question with us, I thought proper to take up the case on principles, and, on principles, not having any precedents binding on us, on the subject, it is my opinion, the action of trespass will not lie, and therefore would not advise a new trial.

BALDWIN, J. I concur generally in the opinion expressed by Judge *Ingersoll*. But I would observe further, that it appears to me the plaintiff cannot maintain this action for want of title or interest in the premises. Admitting that in some cases, from the peculiar manner of laying out an highway, the adjoining owners of land will own the fee, or a freehold estate in the highway, which I cannot admit as a principle always applicable to the highways in this country ; yet I cannot agree that such an estate, where it does exist, is an appurtenant inseparable from the adjoining land. The highway may have a mine or a quarry under it, more valuable than the land to which it is claimed to be appurtenant. This may be separated by sale or reservation, leaving the highway free for all the purposes, for which the public or the adjoining proprietors have right to use it.

In the case before us, the plaintiff is the grantee of *Williams*, who in his deed including the highway within its boundaries, made an express reservation and exception of that from the grant. More apt words could not be used to express the intention of the grantor to retain the fee of the highway

*New-Haven,*
November,
1814.

Peck
*v.*
Smith.

*New-Haven,*
November,
1814.

Peck
*v.*
Smith.

in himself, or to prevent the grant from extending to land which he knew was in the possession of the defendant.

But the plaintiff is not without remedy. He may have his action on the case for any actual injury done to him in particular, by the erection of such a nuisance on the highway in front of his land or buildings.

BRAINARD, J. observed, that he should give no opinion upon what seemed to be considered the principal point in the case, *viz.* In whom does the fee of a highway vest ? as he thought the case did not require a decision of that question. Whatever may be the correct principle with regard to highways generally, the fee, in this instance, was not in *Peck* the plaintiff; because the deed from *Williams* to him contained not only an exception of the easement, but an exclusion of all interest whatever in the land. Consequently, *Peck* could maintain neither ejectment nor tresspass. For any special injury he might sustain, he could have his action on the case commensurate with it. On this ground the charge of the court to the jury was correct.

EDMOND, J. The plaintiff in support of his action relied on a deed from *Williams,* describing a piece of land by certain metes and boundaries, and conveying the whole to the plaintiff with an exception in the deed of the highway running through the same. The court directed the jury, if they found the trespass complained of, was committed on the highway referred to in the exception, to find for the defendant. On this direction the motion by the plaintiff for a new trial is grounded. It is admitted, that the highway was laid out by the select-men of the town, on the land of *Williams,* before his conveyance to the plaintiff. From these facts I think it necessarily follows, that the fee of the highway was in *Williams ;* that by *Williams's* deed to the plaintiff the fee passed to him, as the boundaries of the land include the highway ; unless the exception in the deed is a reservation to *Williams* of the fee of the land, on which the highway was laid ; or unless the laying out of the highway divested *Williams* of the fee, and amounted to an absolute transfer from him of his whole title and property in the soil.

In respect to the exception in the deed, I cannot consider it as a reservation to the grantor of the fee of any lands

within the boundaries given, but inserted by way of caution, merely to give notice of the public right of passage, and to secure himself against any possible liability on his covenant that the premises were free from all incumbrances whatsoever. The word " *highway*" does not *necessarily* import any thing more than an easement or right of passage. I lay the exception in the deed, therefore, out of the case, and consider the plaintiff as having all the right and title to the highway and land on which it was laid, that *Williams* had *subsequent* to the laying out of the road by the select-men.

*New-Haven,* November, 1814.

Peck *v.* Smith.

The next enquiry is, what effect had the laying out of the road by the select-men on *Williams's* property? Did it divest him of the *fee?* The whole power of select-men and county courts, in relation to highways, is given by statute : We search there in vain for an authority to pass the *fee.* A statute giving such power would be oppressive and unjust. In lands holden in fee simple the owner has an absolute property. They are not to be wrested from him by the sovereign power of the state, except in cases of *justifiable necessity;* and where such cases occur, nothing more is to be taken from the individual than the public exigency necessarily requires, and then only upon a fair *equivalent.*— Where a new highway becomes necessary, an easement or right of passage is all the public have a right in justice to demand. So much the owner of the soil is bound to yield. When that is obtained, the public exigency is satisfied.— There is no necessity that the *fee* of the land should accompany the easement. Nothing to my mind is clearer than that the accommodation of public travel, and not the purchase of land, was the object contemplated in clothing select-men and county courts with such power as they possess by statute in relation to roads. The convenience and necessity of the road is to be the subject of their enquiry. When that is found to exist, the mode of laying out is prescribed ; when that is performed, so long as the necessity of the road remains " such ways shall be and remain *for the use* for which they were laid out ;" and when they become " unnecessary for *public use*," they may be discontinued and " be at the disposal and for the benefit of the corporation or person to whom the fee of the land belongs upon which the road was laid." From all this I find nothing, even by

Peck
*v.*
Smith.

implication, to warrant the idea, that select-men or a county court have authority to deprive the owner of the *fee.*

The discontinuance of a highway conveys nothing back to the owner of the fee. It amounts only to a judicial decision that the exigency which authorized the appropriation is at an end, and that the owner of the soil is at liberty to resume the occupation of his lands, or dispose of them discharged from the servitude to which they had been subjected.

In this view of the case, I am satisfied that the *fee* of the highway was in *Williams ;* that it passed by his deed to the plaintiff ; that the right of way or passage only belonged to the public ; and that the plaintiff for the injury complained of, although committed on the highway in question, might be well entitled to recover in trespass, and that the jury ought to have been so directed. I think a new trial ought, therefore, to be granted.

Whether the fee of highways laid out by select-men and county courts belongs to the owner of the adjoining ground is a question that has not appeared to me obsolutely necessary to discuss, in order to decide the case under consideration : It may not, however, be altogether amiss to make a few observations in respect to it. If I have been correct in the remarks already made, it is clear the laying out of a road by select-men or a county court does not, and cannot, deprive the owner of the land of the fee. If so, the fee must of necessity remain with the owner ; and if not alienated, devised or conveyed by him, descend to his heirs, or escheat in failure of heirs to the state. And regularly, it would seem, the person claiming the fee, ought to shew a title in himself by descent, deed or devise. But this notwithstanding, length of time without interference or claim on the part of the heirs, the disposal by the ancestor of all his adjoining land, and other circumstances, may furnish a presumption in favour of the adjoining proprietor sufficient to warrant courts of justice in adopting as a general rule of law the principle that the fee is in the adjoining proprietor or proprietors ; and proof that the party claiming the fee is the adjoining proprietor may be considered as evidence of title, so far forth, as to cast the burthen of proof on the party contesting it. But to any one general rule that can be adopted in relation to highways of *this description,* it appears

*New-Haven,*
November,
1814.

Peck
*v.*
Smith.

to me, there must be exceptions :—*e. g. A.* owns a piece of land ; a highway is laid across the middle of it ; the fee remains in *A.*—Again, *A.* and *B.* own lands adjoining ; a highway is laid wholly on *A.*'s land, but bounding on the land of *B.* Here it is clear the *fee* of the way remains in *A.*, as much as in the first case ; for laying a servitude on the land of *A.* cannot transfer any part of the fee to *B.*, although by the laying out of the road *B.* has become an adjoining proprietor. Take one case more : *A.* owns land ; *B.* owns land adjoining on each side of it ; the whole of the land of *A.* is laid out for a road. Will it be said, in such a case, that the *fee* is transferrred from *A.* to *B. ?* That in case of a discontinuance of the way, he shall hold it against *A.*, because he owns the land adjoining ? I think it cannot be said with reason, because proof of such a set of facts, in respect to the laying out of the road, and the circumstances of ownership continuing the same as at the time of the laying out, rebuts and oversets entirely the presumption that the road was originally laid on *B.*'s land, or the land of those under whom he claims. The same proof equally excludes the supposition that when *B.* purchased his land, the fee in the way accompanied and made part of his purchase, because the fee was then in *A.* exclusively ; no right of way existed. The common law rule, that the fee of a highway is in the owner of the adjoining land could not *then* apply, and the laying out *afterwards* by the select-men, &c. could not transfer a *fee.*

With respect to highways laid out by the original proprietors of townships, they are generally ancient, and were laid out at a period, when it can scarcely be imagined, and we are not now to presume, that those interested in the laying out were ignorant of the legal import of the word *highway,* or *king's highway,* formerly so called. They undoubtedly understood, that it implied a *way,* or passage common to all the king's people ; that, by the rule of the common law, the freehold of the soil was in the lord of the manor, or in the owner of the land on each side. It must have been equally well known, that when lands were voluntarily located by the owner or owners, and appropriated as common *highways* to public use, whatever might have been the consideration, or motive for such an act, or the manner of doing it, being done and accepted, all the laws in relation to the repairs of

highways, building bridges, removing nuisances, &c. would immediately attach, and the grant (without the consent of the public) become irrevocable. With a full knowledge of all this, it seems to have been the general practice of the owners of a township, or *propriety* (so called), being owners in fee simple of the land, to accommodate public travel, to advance their common interest, and with an eye to the division of their common property, to set apart and appropriate certain portions of their land, over which they granted a highway, or common passage. This, while it cast the burthen of providing roads equally on their common property, did not affect the freehold of the soil; it remained in the proprietors. They were then, *in fact* the *owners of the adjoining land on each side;* they *in fact,* furnished the ground for the highways; the very situation presumed and assigned as the reason for the rule of the common law, that " the fee of highways or freehold of the soil is in the lord of the manor or the owner of the land on each side." It follows, that the laying out of their highways did not divest them of the fee. It remained in connexion with other parts of the propriety as a common interest. Each and every of the proprietors, and such as had purchased shares under them, might be said to be not only owners, but adjoining owners. But when the proprietors proceeded by their joint act to make a division of the whole or a part of their township or propriety, to be held in severalty; so far as the division extended, the common interest terminated. Individuals became the adjoining owners; each received his allotment by the mutual consent and agreement of the concerned, without reservation, in satisfaction of his claim in the propriety, accompanied with every right, title and privilege in relation to it, which was, before the division, held by the proprietors in common; or which they might have claimed and been justly entitled to, by the known and established rules and principles of the common law; among which, no one rule perhaps was better known and established than the one already mentioned, " that the freehold of the soil of a highway is in the owner of the land adjoining." The same act of the proprietors that constituted the individual the owner in fee, in severalty, of the portion allotted him, vested him with the fee in those highways, where by the location of his allotment, he became the adjoining owner, on both

*New-Haven,*
November,
1814.

Peck
*v.*
Smith.

sides ; and when adjoining on one side only, with the fee in a moiety, not as *incident, appendant* or *appurtenant,* but as a *component* part of his share or allotment in the division of the propriety.

As in the original division by the proprietors the fee of the highways does not appear to have been particularly noticed, but left to be governed by the common law rule in relation to it : So in the transmission of the lands from the individuals to whom they were first allotted, the same silence as to the fee of the adjoining ways has prevailed, and the same common law rule been left to operate. So also in the settlement of estates, no instance, I presume, can be found, where the fee of a highway, *as distinct from the adjoining land,* ever found its way into an inventory, or has been the subject of distribution.

From these considerations, and from a firm persuasion of the innumerable mischiefs that would result from a different decision, in respect to the fee of highways of *this description,* I am prepared for a uniform application of the common law rule to such ways ; and to consider ownership of the adjoining land on each side, as furnishing conclusive evidence that such owner is the owner of the fee in the adjoining way.

TRUMBULL, J. Two questions arise in this case. First, Is the property of the soil in the plaintiff, subject to the right of an highway over it, as an easement only ?

A way, whether public or private, is merely a right of passage over lands. A highway, *ex vi termini,* is but an easement ; a right of way over land from its nature presupposes the fee of the soil to be in another ; it could not otherwise exist as a separate right, for it would be absurd gravely to lay it down, as a principle of law, that a man has a right of passing over his own land. So are all the *English* authorities. 2 *Coke's Institutes,* 705. " The freehold of highways is in him, that hath the freehold of the soil ; either the lord of the manor, as part of his waste, or the land owners on both sides of the way. It is called the *king's* highway, not that he hath any property in the soil, but because of the privilege he hath of a free passage for all his people. The freehold of a high street is in the lord of the manor, and the people have nothing there, but a liberty of passage. The freehold and profits of a way, that leadeth

*New-Haven,*
November,
1814.

Peck
*v.*
Smith.

to the fields are in him that hath land next adjoining." So 1 *Roll. Abr.* 392. Trees in a highway generally belong to the proprietors of the land *ex utraque parte;* also the lord or owner of the soil shall have an action of trespass for digging the ground there. *Com. Dig. tit.* Chimin A 2. *Bac. Abr. tit.* Highways B. *Wood's Instit.* 99. A way is only an easement, and no interest in the land. *Yelv. Rep.* 159, *Croke Jac.* 190. It cannot be granted to an use, *quia ipso consumitur usu.* 2 *Black. Comm.* 330. 1 *Jones* 127.

*Coke* indeed gives as the reason, why the freehold of highways is in the lord of the manor, or the land owners on both sides of the way, that " the law presumes the way was at first taken out of the lands of the party, that hath other lands adjoining it ;" and it is said, that this reason cannot apply in this state ; that our mode of laying out or establishing highways is different, and gives to the public the right of soil.

But these rules apply universally in *England,* not only to ancient highways, but to those more recently altered and enlarged according to the mode there prescribed by statute, or laid out and assigned by the king's licence ; and neither our method of establishing highways by reservation, nor of laying them out according to our statute, gives to the public a freehold in the soil. Like theirs, it gives to the owners of the lands, a compensation in damages only, in those cases where the soil over which the way passes is private property.

By the statute 8 *William* 3. the justices at their quarter sessions have power to enlarge highways to a certain width, and to impannel a jury on oath to assess such recompense to the owners of the ground as they shall think reasonable, not exceeding five and twenty years purchase, and also recompense for making a new ditch and fence to that side of the highway that shall be so enlarged, &c.

This clause is copied into the general act relative to highways, passed in the 7th year of *George* 3., with the following alterations ; that two justices may order narrow roads to be widened to a sufficient breadth ; that the surveyor, with their approbation, is to make agreement with the owners of the soil for the recompense and for making new ditches and fences ; and if he cannot agree, the damage is to be assessed by a jury.

By the statutes of this state, *tit.* Highways, *chap.* 1.

New-Haven, November, 1814.

Peck v. Smith.

(*Day's* edit.) the damages done to the owners of the land are to be estimated and paid ; and *chap.* 2. When any highway shall be discontinued as unnecessary, the same shall be at the disposal and for the benefit of the corporation or person, to whom the fee of the land belongs, on which the road was laid out.

Turnpike roads, and roads conveyed to the public by deed from the proprietors of the soil, granting the land for a highway, rest wholly as to the rights of those proprietors, turnpike companies and the public, on the grants or charters of incorporation, by which they are established : Though I am of opinion, that the owners of lands adjoining such roads are entitled, as appurtenant to their land, to all privileges, uses and profits, not inconsistent with the rights therein granted or reserved. So also in respect to highways, standing merely upon use and prescription, or sequestered and reserved by the original proprietors of the soil. But this point does not arise in the case before us.

The lands over which this highway passes were the property of *Benjamin Williams.* During his ownership, the highway was laid out, according to the statute, and for sundry years used and occupied for public travel. The defendant, without right or license, dug and stoned up a cellar in said highway, erected a shop thereon, and hath ever since continued in the possession and use of the shop and cellar. After this shop was built, *Williams* by deed conveyed to the plaintiff in fee, all the land (which extends on each side of the highway) with all appurtenances " saving and excepting this road or highway." This is an exception of the easement only. The freehold of the soil over which the way is laid, was in *Williams,* and well passed by the deed to the plaintiff.

The only remaining question is, Whether the plaintiff can maintain this action of trespass ?

It is contended, that the action ought to be brought on the case, for placing a nuisance in the highway to the special damage of the plaintiff. But according to the principles already stated, it is clear that the digging in the soil, erecting the shop, taking exclusive possession of the land on which it was built, were not merely placing nuisances in the highway, but were direct and immediate trespasses against *Williams,* who was then owner and possessor of the soil.

*New-Haven,*
November,
1814.

Peck
*v.*
Smith.

See the distinction between *tresspass* and *action on the case* in *Reynolds* v. *Clarke,* 1 *Stra.* 635. *Harker & al.* v. *Birbeck & al.* 3 *Burr.* 1563. *Scott* v. *Shepherd,* 3 *Wils.* 412., &c. But the present plaintiff can only maintain this action for some trespass against his possession since he became the owner ; and no trespass by digging, breaking the soil, or erecting any new building is claimed in that time.

The continuance of exclusive possession of the shop and cellar is a disseisin of the plaintiff's freehold, for which he may maintain trespass against the defendant. *Co. Litt. s.* 430. 2 *Roll.* 550. *& seq.* Every entry by the defendant claiming such exclusive possession is a new trespass.

It is true, that by the *English* rules the owner must enter and have actual possession before he can maintain trespass for an injury done to the land, &c. while he was ousted. But by our law, he who has the right of possession by deed on record may bring his action against a disseisor or a trespasser, without the formality of actual entry or regress.

For these reasons I am of opinion that the charge to the jury was incorrect, and that a new trial ought to be granted.

SMITH, J. was of the same opinion, on the same grounds.

SWIFT, J. The question is, whether the plaintiff, in virtue of owning the adjoining land, owns the freehold and soil over which the highway is located ?

An idea has been entertained by some, that the public have the fee in highways, and are the owners of the soil, over which they are laid. This erroneous opinion originated in a misconception of the nature of a highway. A highway is nothing but an easement, comprehending merely the right of all the individuals in the community to pass and repass, with the incidental right in the public to do all the acts necessary to keep it in repair. This easement does not comprehend any interest in the soil, nor give the public the legal possession of it. Such is the description of a highway by all the common law writers ; and this being the nature of it, the consequence clearly follows, that the right of freehold is not touched by establishing a highway, but the freehold continues in the original owner of the land in the same manner it was before the highway was established, subject to the easement. To say, then, that the public in virtue of having

*New-Haven,*
November,
1814.

Peck
*v.*
Smith.

a highway established over land become the owners of the freehold, is a palpable contradiction in terms. It is saying, that a mere right of passing and repassing, without any interest in the soil, is an estate in fee simple. It might as well be said, that an estate at will is an estate in fee-simple. If the public are the owners of the soil, the privilege of passing over it cannot be called an easement. Every man has a right to pass over his own land, yet nobody calls this an easement.

It is said, that in the first settlement of this country, and in the original laying out of towns, lands have been reserved for highways ; and that this reservation has ever been to the public, and could not have been a right of passage over the lands of an individual, as no individual ever separately owned the land so reserved.

It makes no difference who owned the land when the highways were reserved or granted. Whoever owned the land retained the fee in the place where the highway was reserved, and whenever he sold or granted the adjoining land, the freehold in the soil of the highway passed as an appurtenant to the land subject to the easement. It is also said, that in laying out a highway pursuant to the statute, the freehold of the land is taken by the public. But the least reflection will shew this opinion to be erroneous. The statute does not direct that the owner shall be paid for the value of the land, but merely the damages, which may be more or less than the value of the land, according as the highway is beneficial to him. It also declares, that after certain steps have been pursued, *said highway shall be, and remain a public highway.* If instead of this, the statute had declared, that the public should thereby become vested with the freehold of the soil, over which the highway was located, there would be some reason for saying that the public acquired a fee ; but the expressions used not only exclude such idea, but shew that the intention of the legislature was to take only the right of passage ; for such is the appropriate meaning of the word *highway* used in the statute.

Again, it is said, that it has been long practised to exchange highways, and that this must have been on the ground that the town was entitled to the fee of the land taken up for highways. Admitting such to have been the

practice, no argument can be drawn from it ; for it is clear that towns have no power to exchange highways, and cannot at any rate have the fee of lands taken up for highways. If it is not in the adjoining proprietors, it must be in the public. Such proceedings in towns must of course be illegal ; and can have no weight in settling a question of law.

It is further said, the legislature have authorised cities to exchange and sell highways ; but this does not prove, that the legislature own the land. It might as well be said, if a tenant at will alienes in fee, that therefore he had an estate in fee. The truth is, the legislature do not proceed on the ground that they own the freehold ; but in virtue of their legislative power. Whether they have such constitutional power or not can make no difference with regard to the right of soil.

There is nothing then in the custom or usage of this state, which oppugns the common law idea, that a highway is merely an easement.

But it is further contended, admitting the freehold of an highway to be in the adjoining proprietor, yet that in this case the grantor of the plaintiff made a reservation of the highway from the grant, and that more apt words could not be used to express his intention to retain the fee of the highway in himself. Here is repeated the same mistaken idea respecting the meaning of the word *highway ;* for it is supposed to comprehend the freehold : but when we advert to the true meaning of the term, it is evident that the grantor could not have made use of more apt terms to express his intention not to reserve the fee of the land, but to except the easement, belonging to the public, so as not to make himself liable on his covenant against incumbrances. Suppose in the deed the expression had been reserving to the public the right of every citizen to pass over the land where the highway is laid ; all will agree, that this would not have reserved the freehold. The expression " reserving the highway," is precisely of the same import.

But a new ground is taken in this case. It is said, admitting the adjoining proprietor has the freehold of the soil in a highway, yet he cannot maintain ejectment or trespass ; and that the opinion of Lord *Mansfield,* Chief Justice *Parsons,* Chief Justice *Kent,* and other distinguished jurists, is opposed to the principles of the common law.

*New-Haven,*
November,
1814.

Peck
*v.*
Smith.

In regard to the action of disseisin, one objection stated is, that the plaintiff is not entitled to the possession of the property demanded. But this objection is founded on an entire misapprehension of the nature of an easement. If the public have only the right of passing, and the adjoining proprietor has the freehold, the consequence is, that he is, in legal consideration, in possession of the land. The laying out of the highway, and the passing on it by the public, do not disseise, or dispossess the owner. He continues the same possession subject to the easement. He is entitled to every right he was before, except that the public have the right of passage ; and it will not be pretended, that the mere transient passing over a man's land will amount to a disseisin. Suppose a man should pass a hundred times in a day over my land ; this does not oust me of my possession. He must do something amounting to a permanent occupation, such as keeping me out of possession, driving off my cattle, or cultivating the land.

It is asked, how can this possession be enjoyed subject to the easement ? The easement is a right of passage, and an individual possession interferes with that right. One then interfering with the other, they cannot exist together. But this is saying that an easement in one, and an estate in fee in another, with actual possession, cannot co-exist in the same land. This is a misapprehension of the nature of an ease-ment. An easement is a privilege, service or convenience in the estate of another, by grant or prescription, but comprises no interest in the thing itself. It supposes that different rights in the use of the same thing may co-exist in different persons ; and nothing is more common than for one to have an ease-ment in the land of another, who has an estate in fee, and is in actual possession. Suppose a grant to one to draw water at the well of another. Here the grantee may pass a thousand times a day to the well ; but he does not dispossess the gran-tor. The rights of each are perfectly compatible. But to put a case which in all respects compares with the present : Suppose I grant to a man a right of way, or the privilege of passing over my land within certain limits, and a stranger disseises me ; cannot I maintain ejectment against him ? Is it in his mouth to say, that another has the right of passing over the land, and therefore I have no right to the possession ? Suppose the grantee himself should disseise me, and I bring

ejectment ; can he say he has the right of passage, and therefore my action shall not be sustained ? The answer would be obvious. I have granted you nothing but the right of passage. The freehold of the soil remains in me. I have a right to every thing consistent with your passing over it. I may depasture and mow it ; take the trees, and any thing growing on it ; and of course, am entitled to the possession for these purposes. And there is no inconsistency, no interference of right, for me to take possession of the land subject to the right of passing. So in the present case, the plaintiff owns the soil of the highway, subject to the right of the public to pass over it ; and there is no more inconsistency in his recovering possession subject to the public right of way, than there is for the owner in the supposed case to recover possession subject to the private right of way.

Again, it is said, the defendant may say to the plaintiff, you have no more right to the exclusive possession of it, than I have. If you get possession of it, you will be a tort-feasor, and the public will immediately turn you out. But it is not necessary that the plaintiff should have the exclusive right of possession to maintain ejectment. If a tenant in common be disseised by his co-tenant, he can maintain ejectment against him, and be put into possession with him. He recovers subject to the right of the co-tenant. It is sufficient, if he has the right of possession for any purpose ; and then if he is ousted of that right, he may always recover possession so as to be enabled to enjoy it, but not so as to destroy any co-existent right in another.

But what right has the defendant to say to the plaintiff, if he recovers he will be a tort-feasor, and the public will immediately turn him out ? What justification is that for him to do an act in violation of another's right ? If the plaintiff is the owner of the land, the defendant can have no right but in common with the public to pass over it. He may not arrogate to himself the exclusive possession by building a house thereon. This is a violation of a right not taken from the plaintiff by establishing the highway. He has a right to the possession for certain purposes, which this act defeats ; he must, of course, have a remedy to recover it. How can the defendant say, that it is not the object of the plaintiff to recover possession to abate the nuisance ? It

New-Haven,
November,
1814.

Peck
v.
Smith.

might lead to great disturbance to pull down a house over the heads of the family of a man who had erected it in the highway. The adjoining proprietor, instead of resorting to this violent measure, may wish to recover possession for the purpose of abating the nuisance in a peaceable manner; and it can never lie in the mouth of the wrong-doer to say such is not his object.

If the plaintiff recovers, he obtains possession subject to the easement, subject to the right of the public to remove the nuisance whenever they please. But it may be the case, that the public may not find it necessary to pull down the building in order to enjoy the easement: And shall the defendant say, because the public have the right, and may possibly abate the nuisance, therefore the plaintiff shall not recover a right which may possibly be of great use to him? It is well known, there are many buildings erected by adjoining proprietors in highways, which, as they do not injure the public, have been long permitted to remain. But admitting the doctrine contended for to be correct, then if a stranger should get possession of them, the owner could have no legal remedy to regain it, and could only redress the injury by turning the trespasser out of the house with force and strong hand, or by pulling it down about his ears.

I apprehend, then, if the adjoining proprietor be the owner of the soil of the highway subject to the easement, it follows as an undeniable consequence that he is entitled to every use consistent with the easement; and if ousted of his right, must have his proper remedy to regain it.

To show that an action of trespass cannot be maintained, it has been said, that the land being thrown open and used as a highway, it is no injury to the plaintiff that this shop and cellar are there; or rather, it is no more injury to him than to any other individual of the community. He is not deprived of any right. He could not have set up the same shop and cellar in the same place.

This is not the view in which the subject is to be considered. Admitting the adjoining proprietor owns the soil, and the public have an easement, then, on principles of common law, (and we are now examining the question on that ground) he has every right to the land covered by the highway, excepting the passage, which he has to any other land; he may apply it to every use, and take every profit, consist-

ent with the easement; and of course, may maintain an action of trespass for every act done to the land not necessary to the enjoyment of the easement, which would be a trespass to land not incumbered by a highway. The question then is, not whether the plaintiff has sustained more injury by the act complained of, than any other person, or whether he has a right to erect the shop, and dig the cellar; but whether the defendant has not done an act not necessary to the enjoyment of the easement, which would have been an actionable trespass if committed on land of the plaintiff not covered by a highway? That the acts done are such acts, admits of no question. Here then is clearly an infraction of right.

Again, it is said, that the owner cannot claim a use of the land inconsistent with the easement; that digging the cellar and building the shop are inconsistent with it; and therefore, the plaintiff had no right to have done the acts; that no man can maintain an action of trespass for acts done on land, unless he had a lawful right to do the same acts himself, excepting in case of waste; and as the plaintiff had no right to erect this nuisance, he cannot maintain an action against another for doing it.

This is the first time this doctrine was ever heard of, and it is not supported by principle or precedent. Who ever before enquired, in an action of trespass, whether the plaintiff had a right to do the act himself? The question is, whether the defendant had a right to do it. An exception is made in the case of waste. I will mention other cases to shew that no such rule can exist. Suppose I grant to a man a private right of way over my land, and he should dig a ditch across the place where the right of way is granted; I can maintain trespass against him for the injury done to the land, though I have no right to dig the same ditch, because it would obstruct his way. Suppose I let to a man a meadow to cut and carry away the grass; if he should plow it up, I can maintain trespass against him; yet I have no right to plow up the meadow myself, for that would destroy the grass to which he has a right. Indeed, in all cases where easements exist, or where different persons have different rights to occupy the same land, there will be certain acts which violate co-existing rights, which neither party may do, and for which each has a remedy. So that to say that no man can maintain trespass for an act which

he has no right to do himself, is a position as unfounded as it is novel.

*New-Haven,*
November,
1814.

Peck
*v.*
Smith.

It is also said, that when the land of any person is uninclosed, it may be fed by cattle not his own, and may be travelled over by other people, and he has no right to complain; in like manner, if it be taken for a highway, it may be thus fed and thus travelled on. This is stated as a doctrine of the common law; but there is no such common law. By that law trespass *quare clausum fregit* will lie, whether the land be inclosed or not. The word "close" imports an absolute interest in the soil, and not land inclosed by a fence. By the common law an action of trespass will lie against the owner of cattle for feeding the land of another not fenced, as well as for making an unlawful entry upon it. In *England,* as the owners of cattle are bound to restrain them, and the owners of land are not bound to fence against them, trespass is constantly brought for the injury done by cattle to lands uninclosed. But in this state, by force of statute, every man is bound to inclose his land by a fence of a certain description, before he can maintain trespass against the owner of cattle for entering upon and feeding it. This is a regulation different from the common law; it only extends to the case of injury done by cattle; but in all other cases of injuries done to land, the owner has the same right of action, whether it be inclosed or not. It then is a position not warranted by law, that land not inclosed may be travelled on by other people, and the owner is without remedy.

As to the right of feeding a highway by cattle not belonging to the adjoining proprietor, it is clear at common law trespass will lie against the owner of the cattle in favour of the adjoining proprietor. This follows as a necessary consequence of the doctrine, that the adjoining proprietor owns the soil subject to the easement. Such is the opinion now entertained by the courts of *Westminster-Hall.* The case of *Stevens* v. *Whistler,* 11 *East* 51. was trespass, and the declaration contained two counts, one for entering the plaintiff's close called *Shepherd's lane,* and the other for breaking and entering another close in the same parish. After a general verdict for the plaintiff, a motion was made to set it aside, and enter a verdict on the latter count only, because *Shepherd's lane* was proved at the trial to be an open parish highway, and there was no proof of the plaintiff's exclusive possession

of that, but only that he had lands on one side of the lane, which at most would only prove that he was entitled to the soil and freehold of half the lane opposite to his own inclosures, and would not justify his declaring for a trespass in the lane generally, as if he claimed an exclusive right to the whole, which might be set up on other occasions. The trespasses proved were, that the defendant had depastured his cattle all along the lane, as well in the parts opposite to the plaintiff's closes, as in other parts, and they had also broken into an inclosure of the plaintiff's. But the court said, that the plaintiff had an exclusive right to part of *Shepherd's lane*, and if the defendant meant to drive him to confine the trespass complained of to that part of the lane which was his, he should have pleaded soil and freehold in another, which would have obliged the plaintiff to new assign. This case proves all the common law principles I have contended for in relation to highways. It shows, that the adjoining proprietor may have the exclusive right of depasturing an open parish highway, notwithstanding the public right of passing it; and of course, that the public have not the exclusive possession of it. It also proves, that trespass *quare clausum fregit* will lie for depasturing an open highway; and *a fortiori*, uninclosed land; so that the position is incorrect, that when the land of any person is uninclosed it may be fed by cattle not his own, or that the land taken for a highway may be thus fed. It is true, the common law has been changed in this state by a statute requiring lands to be fenced, or the owner cannot maintain trespass for an injury done by cattle. Were it not for this statute, such action could be maintained here. The exclusive right of depasturing the highway in front of a man's land is not taken from the adjoining proprietor by laying out the highway; for it is not necessary to the enjoyment of the easement; but the right of action for a violation of such right is taken away by an indirect consequence of the statute respecting fences. But suppose no cattle should be turned into the highway, and the grass should grow in front of one's land so as to be fit to mow, he could maintain trespass against a stranger for cutting and carrying away the grass; for this is a right which is not affected by the statute. So on the same principles he can for cutting trees, digging the soil, or destroying mines. It is then conclusively evident, that the public right of passing a highway

*New-Haven,*
November,
1814.

Peck
*v.*
Smith.

does not exclude the owner of the soil from deriving many important advantages from the rights remaining in him ; and it is the duty of courts to furnish the same protection and security to these as to all other rights.

It is also said, if this action be sustainable, it may be sustained for every load of wood, every log, every cart or other implement of husbandry laid upon the highway, which would be highly prejudicial to individuals, as well as totally overturn what has always been considered to be the law on the subject.   If this action cannot be sustained, then any person may put wood, logs, carts, every implement of husbandry, and every thing else in front of our houses and lands in such manner and quantity as he pleases, and we have no remedy but to complain to a grand juror; and if he turns a deaf ear to our complaints, we have nothing to do but remove them as often as he pleases to put them there, or patiently submit to the insult and injury.   Nor is this all.   Any person on the same principle may cut down and destroy ornamental trees in front of our houses and lands, may build yards, dig up the ground, and destroy the mines.   It often happens there are convenient places in the streets in front of lands to collect manure, or turn it on the land ; but any person may cart it away, stop the ditches, or turn it from the land.   In these cases, there is no sort of remedy, not even a complaint to a grand juror.   If you bring an action, the answer is ready.   " You have no possession of the highway ; you have no right of possession, any more than the defendant has ; for by its being taken for a highway, you are entirely excluded from having any foothold in the soil, though the freehold or fee was in you."   Such language as this would give but little consolation to a man whose neighbour had placed his woodpile in front of his house, or land, cut down his trees set out for ornament and shade, and dug up and carried away the turf of a flourishing green to make a handsome plat for himself.   But on the principles contended for, he would be without legal remedy ; he must either submit with patience and resignation, or become the avenger of his own wrongs.   He might indeed retaliate the injury ; but this would lead to such dreadful consequences that every mind will shudder at a doctrine that directly or indirectly gives a sanction to them.

But how would it be prejudicial to individuals to be liable

*New-Haven,*
November,
1814.
⁓⁓⁓
Peck
*v.*
Smith.

to an action for laying wood, or implements of husbandry in front of their neighbour's house, or land ? Can they not as well place them in front of, or upon, their own land ? I can see no prejudice that can be sustained, unless it be one for a man to be deprived of the power of injuring a neighbour by piling wood and placing implements of husbandry in front of his house and land. But it was hardly to be expected, that this would be urged as an objection to the operation of a principle of the common law, as old as the common law itself.

No prejudice, however, can arise from making individuals responsible in such cases. It would restrain every one from doing any act injurious to the front of another ; it would secure the private rights retained in highways ; and prevent the conflicts and confusion which might occur in the struggle for the possession of property, that has no definite owner.

It is also said, that on the ground the plaintiff has no property in the soil of the highway in question, he is not without remedy ; he may have his action on the case for any actual injury done to him in particular by the erection of such a nuisance in front of his lands or buildings. There is an ambiguity in this proposition which is all that renders it difficult to answer it. What is here meant by actual injury ? If it means such special injury to the person or personal property occasioned by a nuisance in the highway as will give a right of action to an individual, then this position will be conceded to be law ; and the plaintiff can maintain his action for such injury, whether the nuisance be in front of his land or not ; but this will give him no remedy in this case, because he has sustained no injury of this description. But if it means, that the sole act of digging a cellar, and erecting a shop in the front of another's land, but who is not the owner of the highway, is such actual injury as will give an action on the case (which is precisely the plaintiff's case, admitting he does not own the highway), then the answer is, that such position is not law. At common law, trespass can be maintained for an injury done to a man's land though covered by a highway. So case can be maintained for any particular injury to one's person, or personal property, occasioned by a common nuisance in the highway ; but case cannot be maintained for any injury done to land in the highway in front of another's land,

which would give him an action of trespass if he was the owner, and which would be no ground of action as a common nuisance. For no action can ever be sustained for any thing done in the highway for the sole reason that it was done in front of one's land. Trespass can be maintained for an injury to the land because he is the owner, not because it injures the front of the land. Case can be maintained for consequential damage arising from a nuisance, not because it is in front of one's land; for the right of action would be the same, though the nuisance stood in front of another's land. Suppose then an action of the case should be brought in which the plaintiff should declare, that the defendant dug a cellar, and erected a shop in front of his land, but not on land that belonged to him, and say nothing more (which is all there is in the plaintiff's case, if he does not own the land,) will it be said, that here is an injury stated for which an action will lie? Here is no violation of any right of property; for the plaintiff does not own the land. There is no such act as will warrant an action on the case for a common nuisance; for there is no injury to his person, or personal property.

Again, it is said, that the doctrine of the common law, as supported by all the authorities, is, that the adjoining proprietors have a freehold estate in a highway so long as it continues to be a highway subject to the easement, and that the ultimate fee of the land is in that community which must maintain highways, who can sell them when disused.

There is not a single *dictum* or authority to warrant this opinion. It is said by one of the oldest writers on the common law, and sanctioned by one of the ablest judges that ever adorned a court, " That the king has nothing but the passage for himself and his people; but the freehold, and all the profits, belong to the owner of the soil: So do all the trees upon it, and mines under it, which may be very valuable. The owner may carry water in pipes under it. The owner may get his soil discharged of this servitude, or easement of a way over it, by a writ of *ad quod damnum.*" 1 *Burr.* 143. It would seem impossible that one can read this authority, and then entertain an opinion that the public have the ultimate fee, and the adjoining proprietor a freehold continuing only so long as the highway continues; for the public have only the easement or right of passing, which

Peck
*v.*
Smith.

excludes the idea that they have the fee ; and it is expressly declared, that the freehold belongs to the owner of the soil, by which is plainly meant an absolute, and not a conditional one dependant on the continuance of the highway. And it seems a strange sort of logic to say, that when a man's freehold is discharged of an easement, he loses it.

In the argument in support of this doctrine, it is conceded, that when the lord of a manor grants a highway through it, he retains the freehold ; and that if he conveys to different persons on each side, each owns to the centre of the highway ; and that a proprietor may by a writ of *ad quod damnum* remove the easement, and hold the land as formerly. This is a clear concession that the freehold must be in the adjoining proprietors, and that it never passes to the public ; for if the proprietor on removing the easement holds the land in fee, it must be because he never parted with it ; for by this process there is no re-conveyance to him, it merely discharges the incumbrance.

But in the same argument it is further said, that when the road ceases to be a road the land reverts to the public, or to those who are bound to maintain it ; for if it did not, it would belong to the owner of the land from whom it was taken ; but that the law expressly provides, that the surveyors of highways may sell it without making any compensation to the adjoining proprietors, and therefore they have no title to it. Here it must be noted, that by the common law no power is given to any public body or officer to sell highways, and that the authority in *England* is created by statute. It may be asked, how the land, when the road ceases, can revert to the public, unless they owned it before the highway was laid out ? But what is the amount of this argument ? It is this ; because the legislature have authorized surveyors to sell highways when discontinued, therefore the fee of the land is in the community bound to maintain highways. If by the common law, the public have only an easement in the land covered by a highway, it is difficult to see how a statute authorizing a sale of it, could vest them with the fee. The legislature in this state have frequently authorized guardians to sell the lands of their wards ; but nobody ever supposed, because they possessed this power, that the fee of the land was in the legislature, or in the guardians.

*New-Haven,*
November,
1814.

Peck
*v.*
Smith.

This doctrine is further attempted to be supported by the argument that this could not possibly be done by any legislature, if there was any title in the adjoining proprietor, excepting a freehold during the continuance of the highway. But this is arguing in a circle; it is saying, as the legislature have no right to sell highways unless they own the freehold; therefore, the act authorizing the sale proves they own the freehold. To give this argument any effect, the position must be assumed, that a legislature never attempts to do any act unless it be right: A position which no one will seriously attempt to maintain.

It is admitted in the course of the argument, that the legislature can authorize lands to be taken for highways on making compensation to the proprietors. This is not done in virtue of their having the ultimate fee of the land; and certainly they may as well sell highways when discontinued without owning the fee, as they can take land for a highway without owning it, though they make compensation for it; for in both cases, they act by virtue of their legislative power without the consent of the proprietors of the land.

But why is it pretended, that the public, in virtue of the statute authorizing the sale of highways when disused, become vested with the ultimate fee? This obviates no difficulty. It is just as arbitrary to say this, as to say they have a right to dispose of them without being the owners of the fee.

The authority, however, in *Great-Britain* to sell highways is created by statute. We have no such statute here. Our statute is very different, and provides when highways are discontinued they shall belong to them who own the fee of the land. This clearly proves, that the legislature did not consider that they owned the land, or had a right to sell it; for if such had been their understanding, they would unquestionably have directed a sale. It also shows, that they considered it as belonging to individuals, and that they intended to leave their rights to be decided at law.

It is then wholly unnecessary for us to determine whether the *British* parliament had a right to pass such an act, or whether it vested the ultimate fee in the soil of highways in the public, or not. That statute can have no force here; and this case must be decided upon the principles of the

Peck
*v.*
Smith.

common law in the same manner as if it had never been enacted.

By the common law, the only mode of altering a highway is by writ *ad quod damnum* by the owner of the land ; in which case, if the jury found it would be no damage to the public to make the proposed alteration, then by license of the king the altered road is established, and the old one discontinued, whereby it becomes discharged of the easement, and the owner holds it disincumbered ; but no such thing was known as the sale of the land when the highway was discontinued.   Of course, by the common law, there would never be any claim to the land but by the adjoining proprietors.

The result of the enquiry is, that the public have only an easement, a right of passage in a highway ; that the adjoining proprietors have the freehold, and own the soil ; have a right to every use and profit which can be derived from it consistent with the easement ; may take trees growing thereon, occupy mines, or sink water courses under it, and by the common law may depasture it ; that when disseised, they can maintain ejectment, and recover the possession subject to the easement ; and can maintain trespass for any act done to the land not necessary for the enjoyment of the easement which would be an actionable injury if the land was not covered by a highway ; that the soil of a highway descends to heirs and passes to grantees as an appurtenant to the adjoining land ; and whenever the highway is discontinued, the adjoining proprietors hold the land discharged of the easement.

Whether the legislature on discontinuing a highway have the right to dispose of the soil is a matter not necessary to be decided ; for the easement gives them the power of enforcing adjoining proprietors to make a reasonable compensation for it, as a condition of the discontinuance.

When different persons own each side of the highway, each owns to the centre ; but as the title is grounded on the presumption that the land originally belonged to each, then if a case should ever happen that in laying out a highway between adjoining proprietors, the whole should be laid on the land of one, it would seem to follow as a necessary consequence of the general principle, that he should retain the fee of the land in the whole, while the other should have no

mode of protecting his front but that furnished by the law respecting nuisances. It is, however, unnecessary to anticipate the decision of a question which there is little probability will ever occur. I am of opinion, that a new trial ought to be granted.

MITCHELL, late Ch. J., who presided in the Court when the case was argued, expressed an opinion, at the time, recognizing the general doctrine that the right of soil in highways is in the adjoining proprietors; but he thought that in this case the reservation in the deed from *Williams* to *Peck* extended to the right of soil, so that it did not pass; and of course, *Peck* could not sustain this action.