## Case No. 975.

BARCLAY et al. v. HOWELL.

HOWELL v. BARCLAY et al.

[4 Haz. Reg. Pa. 227.]

Circuit Court, E. D. Pennsylvania. April Sessions, 1829.[1]

EVIDENCE—IMPEACHING DOCUMENTS BY ORAL TESTIMONY—EJECTMENT — MUNICIPAL CORPORATION —IMPLIED GRANT—EASEMENTS—PRESUMPTION OF GRANT—DEEDS — CONSTRUCTION — ACCEPTANCE OF CONVEYANCE—EFFECT—USER—DEDICATION—DESCRIPTION OF PROPERTY — REQUISITE PROOF.

[1. Declarations made by a surveyor when laying off a town are incompetent to impeach the map of the survey which has been adopted by the proprietors.]

[See note at end of case.]

---

[1] [Reversed in 6 Pet. (31 U. S.) 498.]

[2. In ejectment, a municipal corporation must sustain its title by proof of as high an order as would be necessary by an individual.]

[3. Where anything is granted, the law implies a grant of those things without which the principal subject cannot be enjoyed, as incident thereto.]

[4. This right is confined strictly to the necessity upon which it is founded, and cannot exceed its just demands.]

[5. The right of the inhabitants of a city to access to a river over the land of the town proprietors is a mere right of way, and does not divest such proprietors of the fee to the land so used.]

[6. The presumption of a grant to the public furnished by the uninterrupted use of a way for convenience is raised by use for a much shorter time than in the case of use by an individual.]

[7. This presumption may be repelled by showing the owner's assertion of right, and denial of the use assumed by the public.]

[8. Ambiguity in the language of a deed requires it to be construed most strongly against the grantor.]

[9. In construing a deed, effect is to be given to every expression, if it can reasonably be done.]

[10. By accepting a conveyance without objection, and with knowledge that a street through the demised premises had been dedicated, the grantee takes subject to the easement thereof.]

[11. In determining the right to an easement of way acquired by user, the fact of user not only must appear, but likewise that the land was susceptible of such use.]

[12. A street dedicated to a municipal corporation vests in the public, subject to its regulation and improvement by the corporation, and cannot be treated or used as private property by that body.]

[See note at end of case.]

[13. In ejectment, it is sufficient to describe the locus in quo sufficiently to acquaint the defendant with knowledge of what is claimed, and to enable him to prepare his defense.]

[14. In ejectment, plaintiff must prove the length of defendant's enjoyment of the premises and their value.]

At law. This was an ejectment [by the lessee of R. H. Howell against Barclay, Florence, and Cotter, officers of the corporation of Pittsburg] to recover a messuage, lot, piece or parcel of land, lying between Water street and the Monongahela river in the city of Pittsburg. [The action was begun in the district court for the western district of Pennsylvania, and removed to this court, under Act March 3, 1821. Heard on objections to evidence. Objections sustained. Verdict for plaintiff. Motion for new trial denied, and judgment on the verdict. This was reversed by the supreme court in Barclay v. Howell's Lessee, 6 Pet. (31 U. S.) 498. See note at end of case.]

The title of the lessor was regularly deduced from Alexander Wilson, to whom the late proprietaries (the acknowledged owners of the manor of Pittsburg, of which the city of Pittsburg and the ground in question, made a part), on the 26th of September, 1814, conveyed all the ground in the above city, lying between Water St. and the Monon-

gahela river. It appeared in evidence that, on the 22nd April, 1784, Mr. Francis, the agent and attorney in fact of the Penns, employed George Woods, a deputy surveyor, to lay off the town of Pittsburg. This duty he performed on the 31st of May, 1784, and returned to Mr. Francis a plan of the town, which he approved of and confirmed on the 30th of September, in the same year. On the diagram representing the survey or plan of this town was written, by Mr. Woods, the words "Water Street" on a space extending along the south front of the row of lots facing the Monongahela from Grant street to the junction of that river with the Allegheny river. This space was of different widths, from about 219 feet at Grant street to about 108 feet at West street, its breadth further west not being shown; and it extended from the row of lots before mentioned, to the Monongahela river, embracing a space of table land from 70 to 80 feet wide in the broadest part, to a few feet in the narrowest, and also embracing a steep bank of the river, and the river beach, which in time of freshes was nearly or quite covered with water.

The town, now city, of Pittsburg, was incorporated as a borough by an act of assembly passed in the year 1804, with the usual powers and privileges, and by various ordinances of the corporation, commencing in the year 1816, that body exercised acts of ownership over this slip of land bounding on the river, by authorizing the erection of wharfs, exacting tolls from all persons landing goods on the beach, etc.

The plaintiff gave in evidence a written agreement between the agent of the Penns and Craig & Bayard, by which the former agreed to sell and convey a certain parcel of the ground, afterwards embraced in Wood's plan of the town, lying in a point formed by the junction of the rivers Allegheny and Monongahela bounded on two sides by the said rivers, and on the third by the fosse of Fort Pitt. On the 31st December, 1784, a deed was executed by this agent to the said Craig & Bayard, for 32 lots, as marked and numbered in Wood's plan, bounded southerly by the Monongahela river; and on the 2d October, 1784, another deed was made to John Ormsby for two lots bounded by Front street on the north, and on the south by the Monongahela. A number of deeds from the Penns to different persons were given in evidence, bearing different dates, subsequent to the year 1784, for lots fronting the rivers Monongahela and Allegheny, the former bounding southerly on Water street, and the latter, on the river, no street having been marked between the lots fronting on that river and the river. Amongst other evidence offered by the defendant's counsel, was the deposition of Samuel Ewalt, for the purpose of proving various declarations of George Wood's, at the time he was engaged in laying off the town of Pittsburg in relation to Water street. This was objected to, as hear-

say evidence of parol declarations to explain or to contradict a written instrument, by an agent acting under a limited authority to lay off the town, and nothing else. Cases cited: 1 Serg. & R. 526; 4 Serg. & R. 298; 4 Yeates, 100; 1 Yeates, 284; 2 Smith's Laws, 256, note; 3 Bin. 175; Mayo v. Murchie, 3 Munf. 358. On the other side were cited: 1 Pet. C. C. 205, [Wright v. Deklyne, Case No. 18,-076;] [Mechanics' Bank of Alexandria v. Bank of Columbia;] 5 Wheat. [18 U. S.] 336; 8 Johns. 508; 16 Serg. & R. 396.

Chauncey & Baldwin, for plaintiffs.
J. R. Ingersoll and Charles Smith, for defendants.

WASHINGTON, Circuit Justice. The evidence offered is altogether inadmissible. The authority of Woods was confined to laying off this town, which of course included the acts of surveying and plotting the lots and streets, so as to exhibit a plan of the town. His work, when completed, was binding upon no person until it received the confirmation of the owner of the ground, either expressly, or to be presumed from his subsequent acts. Woods so understood his authority, for he returned the survey, soon after it was made, to Mr. Francis, who by his letter to Woods in Sept., 1784, approved and confirmed the same. He might have rejected it altogether, had he chosen to do so, and directed another survey to be made upon a different plan. But having confirmed it, it afterwards became a muniment of title, to which the purchasers of lots, and all persons connected with this town, including the grantors, had a right to look, as evidence of title, and by which they were bound. To permit now the parole declarations of Woods to alter, or in any way to affect this delineation of the town, and this muniment of so many titles of which it is the evidence, would be to violate one of the best established rules of evidence, and to let in the most extensive mischief. It is one thing to prove acts tending to explain and point out the true boundaries of a survey, and quite another, to give evidence of the parole declarations of the officer who made it, which might be misunderstood, and of which purchasers as well as vendors looking at the plan, and relying upon it, could have no notice. Woods was the agent of the Penns; but he had no authority to bind them, even by his acts, until they were confirmed. How then could he bind them by his declarations, which forming no part of his report, accompanying the plan, could not be, and therefore were not approved and confirmed?

The great question in the cause, was, whether Water street extended from the range of lots fronting on that street along the entire range of them from Grant street to the river Monongahela, or whether the width of the street was unascertained, and was left to be afterwards laid out of a con-

venient width? Both sides referred to the case of Mayo v. Murchie, 3 Munf. 358; and the defendants' counsel relied much upon M'Donald's Case, 16 Serg. & R. 396; they also cited 1 Sandf. 323, to show that the corporation, or the inhabitants of the town, were entitled to this slip of land as an easement. They also cited 1 Conn. 103; 3 Mass. 284; 6 Mass. 332; 15 Johns. 447; 2 Starkie, Ev. 655, 656; 3 Starkie, Ev. 1216–1219; [Ricard v. Williams,] 7 Wheat. [20 U. S.] 109.

Charge: WASHINGTON, Circuit Justice. Whether the surveys of the plaintiffs or of the defendants, in this controversy, will most subserve the interest and the prosperity of the inhabitants of Pittsburg, is a question which neither the court or the jury can very well answer.—This however is manifest to both, that it is not a question involved in that issue, which, and which alone you are sworn and affirmed to try and decide. That issue is whether the plaintiff has shown to your satisfaction, such a right to the property in dispute, as ought to enable him to recover the possession of it. Considerations such as have been pressed upon your attention by counsel can never tend to promote the ends of justice, and never will be regarded by a conscientious court or jury. The case which you have now to pass upon is by no means a complicated one. There is in truth but one question upon which the controversy mainly turns, and whatever difficulty may attend the decision of it, is to be solved by the jury, since it rests altogether upon the evidence which has been laid before them. The object of the court will be to clear away those matters which do not seem materially to affect the case, in order that that question may more distinctly be perceived. To do this, the claims set up by the defendants to the property in dispute, will be first examined.

The defendants are merely officers of the corporation of Pittsburg, and of course, assert no title in themselves to this property. But they set up a title in the corporation, and in case that cannot be maintained, still they insist that the plaintiff cannot recover in this action, upon the ground, that the entire space between the southern row of lots fronting the Monongahela and that river, was dedicated by the owners of this manor in the year 1784, to the public, as a street, or highway.

As to the title of the corporation, it is proper to premise, that this must, in all cases, be maintained by the same muniment of transfer as would be necessary in the case of an individual. In the year 1784, and down to the period of the conveyance to Alexander Wilson, this slip of land, if it was not wholly given to the public as a street, or so much of it as was not so given, was vested in the Penns, as the undisputed owners of it. It has not been shown in evidence that a grant or transfer of it was at any time made by

them to the corporation, or the town before it was incorporated, or to any person for the use of that body, or the inhabitants thereof. No right of possession in the corporation has been proved, or even asserted, arising from length of time.

But it is claimed as appurtenant, or incident to the right of the inhabitants and lot owners, who cannot enjoy, it is contended, the property granted to them without the use of this slip of ground, whereby they may have free access to the river. Were this species of title to be admitted to exist in the lot owners and inhabitants of the city, it would nevertheless be difficult to discern, how this admission would maintain the claim of the corporation to hold and enjoy this property for their use and benefit in exclusion of the enjoyment thereof by the inhabitants. For if it belongs to the corporation, they may use it in any way most beneficial to the body corporate, and not injurious to the individual corporators or inhabitants of the town. But I cannot understand how one piece of land can be incident to another piece of land; and if it could, still it has not appeared in evidence that the corporate body is entitled to a foot of land within the limits of the city, or to any other right but that of governing the city. If the claim in behalf of the inhabitants be merely of right of way, or reasonable access to the river, that presents quite a different subject of inquiry, which will be attended to, after I have stated for your information the rule of law which applies to the subject. That is, that where anything is granted, the law implies a grant of those things, without which the principal subject cannot be enjoyed, as incident thereto; as if a lease be made of land with all the mines therein, and there be no mine opened upon the land, the lessee has an incidental right to excavate the earth for the purpose of obtaining the mineral, without which the grant in respect to them would be of no value. So and for the same reason, if a grant be made of a close surrounded by the lands of the grantor, the grantee has a right to a way or passage over the lands of the grantor. But this right is confined strictly to the necessity upon which it is founded, and cannot exceed its just demands. The grantee, therefore, cannot claim a right to as many roads as may suit his whim or convenience, nor can he exercise any privilege, but that of a right of way; if he go unnecessarily out of such way upon other parts of the grantor's land he is a trespasser. Now to apply these principles to the present case. A street or streets, it is insisted, leading to the river Monongahela, are necessary to the enjoyment by the inhabitants of their property in the town, derived from the persons under whom the plaintiff claims. If this be so, they are entitled to have them laid off over the land in dispute; if it be private property (which is the great question in the cause) of right, and not of favor; and the

law points out a mode by which this right may be enforced. But the right of soil, is not, as I conceive, thereby divested out of the owner of the other parts of the ground, which beyond all question remain in him, as it was before the street shall have been laid out. The only difference in this respect between the city of Philadelphia and Pittsburg is that Wm. Penn granted expressly to the former this privilege of streets leading from Front st. to the river, which the law would have implied as an incident, and which may be implied in relation to the latter city. But the ground lying to the east of Front st. and between the streets running to the Delaware remained the undisputed property of the proprietor, and as such was used or granted away by him. If the ground in controversy then was not dedicated to the public as a street, it remained in the Penns, subject to the incidental right which has been spoken of; and the only right of the corporation would be to regulate and to preserve such streets as should be laid out running over it to the river.

This brings us to the great question in the cause; was the whole of the ground lying between the lots fronting on the Monongahela, and that river, dedicated by the Penns for a street, or only so much thereof as might be necessary for such an easement? And this leads to an examination of the plaintiff's title. The only direct evidence of such dedication is the survey and plan of George Woods returned to and confirmed by the authorized agent of the Penns. The survey was made on the 31st of May, 1784, and received the approbation of that agent on the 30th September, in the same year. The deed to Alexander Wilson bears date the 26th December, 1814, and it conveys to him all the land lying between the south line of Water street, and the low water mark of the Monongahela river from Grant st. to the confluence of the Allegheny and Monongahela rivers. That a street running south of the line of lots on that river was granted by the name of Water street is satisfactorily proved, not only by the plan referred to, but by the subsequent grants of those lots, all of which call for Water street as their south western boundary. The question which this plan gives rise to, is whether the whole of this slip of land to the river was dedicated to the public as a street, or whether a street of undefined width, but such as convenience might require, was intended to be appropriated.

The defendants' counsel insist that the plan itself furnishes direct proof that the whole space was laid out and intended as a street, the south line of it being distinctly marked, running along the margin of the river. This is denied on the other side, who insist that the line referred to, merely marks the margin of the river, and not the line of a street, and in confirmation of this assertion, they refer to the Allegheny river as it is laid down on the plan,

where the same line is discoverable; and yet it is agreed by both sides, that no street was laid off or intended to be along that river, all the subsequent grants or lots facing it running across the vacant space bordering on the river, to the river. They further rely on the testimony of Vickroy, who made the survey under the direction of Woods, who states that no line was, in fact, run on the river Monongahela south of the lots facing the same. It will be for you to say, whether the appearance of this line on the river in connection with the other lot lines was intended to indicate or does indicate the southern boundary of this street or not?

The other evidence in the cause relied upon to strengthen and confirm that which is termed direct is of a presumptive character. The defendants insist that this evidence establishes a long and uninterrupted use and enjoyment of this slip of ground by the inhabitants of Pittsburg, not short of 45 years. They rely further upon the long acquiescence in the enjoyment and in various acts of ownership exercised by the corporation in authorizing the construction of wharfs into the river, imposing tolls, and the like; upon the evidence of Mr. Coates the agent of the Penns, since the year 1800, who was authorized by them to sell and survey all their lands in the state, that he had no knowledge that this slip of land belonged to the Penns; and lastly that although all the lots in the plan of this town were sold by the agents of the Penns, yet the ground in dispute was never laid off into lots or offered for sale by those agents.

There is no doubt, in point of law, that the uninterrupted use by the public of a way over the ground of an individual for public convenience, for a length of time, affords a presumption of a grant of it by the owner for that purpose; and that a much shorter time will suffice to raise this presumption than would affect the title of an individual in ordinary cases. But the presumption in these cases, as in all others, may be repelled by evidence tending to show an assertion of right by the owner, and a denial of the use assumed by the public. In answer to the acquiescence insisted upon by the plaintiffs, two grants have been given in evidence by the plaintiffs, both dated in the year 1784, the one from the Penns to Ormsby for two lots in October, and the other to Craig and Bayard for 32 lots in December, of that year, both of which call for the river Monongahela for their southern boundaries. The defendants' counsel endeavor to remove the weight of this evidence by insisting that although such are the calls of those grants, still as they refer in express terms, to the lots as numbered in Wood's plan, they were in reality bounded and were intended to be bounded by Water street, and not by the river. That the survey having been made, the plan completed and confirmed, and Water

street marked on it, as dedicated to the public, the Penns had no right, nor did they intend to exercise any, to extend these grants beyond the north line of Water street.

Whatever weight the jury may give to these grants as evidence to refute the alleged acquiescence by the Penns, will be for them to decide; but the court cannot yield to the arguments of the defendants' counsel as to their legal effect. To do so, would in my apprehension be to subvert two of the best established rules for the construction of deeds. The one is that they are always to be construed most strongly against the grantor where there is an ambiguity in their language, and the other is, that a meaning is to be given to every expression in them, if it can reasonably be done. Now, the lots conveyed by these deeds are those marked on Wood's plan, but then they are to run to the river. If they are to be bounded by Water street, the intention, of the parties, as shown by the expression of the deed, will be frustrated. By extending the two lines of those lots pointing to the river, a meaning is given to every expression in those deeds,—and what is to prevent this extension? It is said, that by doing so, they must run across a public highway, or street which would split each lot into two lots. But this would by no means, be the case. The land on both sides of the street (if you should say the street does not cover the whole of the ground) belonged to the Penns, and they had a right to grant each of these lots as entire parcels to the river, subject only to the easement over it which they had previously granted to the public. These observations apply to the deed to Ormsby. But they apply with increased force to that to Craig and Bayard, who were equitably entitled to the ground granted them in December, 1784, in virtue of their written agreement with the Penns in the January preceding, by which the latter were bound to convey the same to them, bounded on one side by the Allegheny river and on the other by the Monongahela. After that agreement, it was not competent to the Penns to encumber that ground with a road or in any other way; without the consent of Craig and Bayard. By accepting the conveyance without objection, and with the knowledge that Water street had, in the mean time, been granted, (as may for the present be presumed) they consented to take the ground so encumbered, not by force of some new contract, of which not the slightest evidence has been given, save the grant itself, but as a fulfilment and execution of the old one.

As to the long use of this disputed piece of ground by the public, it will be for you to say, whether, in point of fact, such use has been proved. In point of law, you must be satisfied, not merely that it was used by the inhabitants of Pittsburg, or others, but that it was used as a highway, or street; and in weighing the evidence on this point, you will naturally inquire, whether, from the

nature of the ground, it was capable of being so used.

As to acts of ownership, exercised, by the corporation in the way which has been stated, it is manifest, that they are altogether inconsistent with the right asserted in behalf of the public, since, if the whole of this ground to low water mark on the river, was dedicated for a street, it was vested as much in the public subject to be regulated and improved by the corporation, and could not be legally treated or used as private property by that body. If upon the whole you shall decide that this ground was granted or dedicated as a street, the plaintiff cannot recover in this suit. If otherwise, and that the spot in dispute in this suit constituted no part of the street, it passed to Wilson under the deed to him, and consequently to the plaintiff who has deduced his title to the same regularly from him.

Verdict for plaintiff.

## On Motion for a New Trial.

Rule to shew cause why a new trial should not be granted; 2d, why judgment should not be arrested.

The following reasons were assigned for both rules:

1. Because the verdict is uncertain and insufficient, in not ascertaining a locus in quo, that being left uncertain by the declaration also;

2. Because, by the declaration and verdict, the whole question at issue between the parties is left uncertain, and the controversy remains undetermined;

3. Because there was no evidence to shew possession in the defendants in the land described in the declaration, if the description be at all applicable to any ground;

4. Because the declaration claims "one messuage, a lot, piece or parcel of land, lying between Water street and the river Monongahela, with the appurtenances, situate and being in the city of Pittsburg;" and the verdict is general, for the plaintiffs, without describing position, extent, boundaries or situation of the land claimed;

5. Because if the finding of the jury were intended to embrace part of the premises stated in the declaration, it should have designated particularly such part.

In support of these rules, the following cases were relied upon: 1 Ld. Raym. 191, 277; Cowp. 346; 11 Coke, 55; Yel. 118, 119; Poph. 197; 4 Mod. 97; 1 Term. R. 371; 3 Term. R. 481; 2 Burrows, 668; [Barr v. Craig,] 2 Dall. [2 U. S.] 151; [Chirac v. Reinicker,] 11 Wheat. [24 U. S.] 280; Tidd. Pr. Append. 479.

On the other side were cited the following cases: 6 Serg. & R. 189; 9 Vin. Abr. tit. "Ejectment," K; Runn. Ej. 470; 1 Burrows, 133, 629, 630; 1 Johns. Cas. 101; 5 Johns. 366; 4 Bin. 78; 3 Serg. & R. 418; 4 Serg. & R. 271; 7 Serg. & R. 101; Runn. Ej. 121;

Adams, Ej. 20; Cro. Eliz. 458; Runn. Ej. 438; Adams, Ej. 328–332.

Binney, Baldwin & Sergeant, for plaintiff. Charles Smith and Jos. Ingersoll, for defendants.

WASHINGTON, Circuit Justice. The third reason assigns the only ground in support of the 1st rule, and that is unsupported by the facts in the case. It was clearly proved that the defendants were in possession of a wharf, and other parcels of ground (as officers of the corporation of Pittsburg) lying between Water street and the Monongahela river, in the city of Pittsburg, at the time this declaration in ejectment was served.

The only real question to be decided is, whether that declaration and verdict are so uncertain that judgment cannot with propriety be entered. The ancient rule was, that the sheriff was bound to deliver possession according to the writ of habere facias possessio, which would of course confirm the judgment, and so long as this rule prevailed there was much reason in requiring such certainty in the description of the land sued for in the declaration or verdict, as would enable the sheriff safely to execute his writ without going out of it to obtain information of the particular parcel which had been recovered, and of which possession was delivered. But when this rule was relaxed, which it has long been, and a new principle introduced, by which the plaintiff was to point out to the officer the particular parcel of land which, in execution of the writ, he is to deliver possession of, and is to take possession, at his peril, of only that to which he has title, the reason for the strictness formerly required in describing the land sued for necessarily ceased, as did the rule founded upon it. And it may now be safely laid down, that it is sufficient so to describe the lands that the defendant may know whether he is in possession of, or claims title to, that which is sued for, or to some part of it, so as to prepare for his defence. That the declaration in this case is certain to this extent, cannot admit of a doubt. Indeed, I am by no means prepared to say that this declaration would not stand the test of the severity of the ancient rule. The location of the land, its position and width, are stated with all convenient certainty, and nothing is wanting to the most precise identification of it, but to describe its length and the number of acres contained in it, which have never been supposed to be necessary in this species of action, certainly not for more than a century past. The defendant can never be injured by an uncertainty in describing in the declaration the particular land sued for, unless he is thereby prevented from fully defending his title to that which he claims and is in possession of. If the plaintiff take possession, under his execution, of land which was not recovered, or of more than he has

recovered, he thereby makes himself a trespasser; besides which, the defendant may be relieved in a summary way upon motion. Neither can the defendant suffer any injury from this uncertainty in the action for mesne profits, for, although the judgment is conclusive as to the title, yet the plaintiff can recover only the value of the profits received by the defendant in consequence of the ouster complained of in the ejectment.

As to the length of time the defendant has occupied, the judgment proves nothing, nor as to the value. The plaintiff must therefore prove how long the defendant had enjoyed the premises, as well as their value.

Both rules discharged.

[NOTE. Reversed by the supreme court, on the grounds with others, that if the land dedicated for the street was essentially connected with the town lots, and enhanced their value when they were sold by the proprietors, the increased value realized by them and their long acquiescence would estop them from asserting any claim, though the land dedicated was not designated on the map; that the declarations of the surveyor should have been admitted in evidence, because, under all the circumstances, they formed part of the transaction; that the court erroneously instructed the jury, in substance, that there could be no right to the street without its use; that the jury should have been instructed that the different calls ought to be taken together, and that the calls for the river might be controlled by the other calls in the deeds, if the jury were satisfied that such call had been inserted through inadvertence or mistake. Mr. Justice McLean, in delivering the opinion, stated: "Whether Water street extended to low or high water mark can be of no importance in the present controversy. If its southern boundary be limited by high water mark, it is clear that the proprietors parted with all their right. It is admitted by both parties that the river Monongahela, being a navigable stream, belongs to the public; and a free use of it may be rightfully claimed by the public, whatever may be the extent of its volume of water. If Water street be bounded by the river on the south, it is only limited by the public right. To contend that between this boundary and the public right a private and hostile right could not only not exist would be unreasonable, but against law. * * * If the jury shall find that the ground in question was dedicated to the public as a street or highway, or for other public purposes, to the river, either at high or low water mark, the right of the city will be established, and the plaintiff in the ejectment must consequently fail to recover." Barclay v. Howell's Lessee, 6 Pet. (31 U. S.) 498.]